MARTIN CANNON v. M. C. WILBUR.

[FILED NOVEMBER 18, 1890.]

1. **Lease**: FORFEITURE: NOTICE REQUIRED.  In order that a landlord may avail himself of an option contained in his lease to terminate the same for a failure to pay the rent, he must give the tenant notice of his intention to declare a forfeiture.

2. ————: WRONGFUL EVICTION: MEASURE OF DAMAGES.  Ordinarily, where a tenant is wrongfully evicted by his landlord, the measure of the tenant's damages is the rental value of the property for the unexpired term, less the amount of rent reserved by his lease.

3. **Evidence** considered, and *held*, to sustain the verdict.

ERROR to the district court for Douglas county.    Tried below before DOANE, J.

*Jno. L. Webster*, and *Seymour G. Wilcox*, for plaintiff in error, cited, contending that notice of forfeiture was not

required: *Sexton v. Chicago Storage Co.*, 21 N. E. Rep., 920, and cases cited; *Colton v. Gorham*, 33 N. W. Rep., 76.

*Charles Offutt*, and *R. W. Patrick*, cited, in reply to the contention: *Wilson v. Gerhardt*, 13 Pac. Rep., 705; *Hendrickson v. Beeson*, 21 Neb., 61 ; Code, secs. 1020–22. As to the measure of damages for wrongful eviction: Sutherland, Damages, sec. 149, and cases; *Mack v. Patchin*, 42 N. Y., 167, and cases.

NORVAL, J.

This is an action for damages which the plaintiff claims to have sustained by reason of the defendant unlawfully terminating a certain lease entered into between the plaintiff and defendant, whereby the plaintiff lost the benefit of the possession of the leased premises. A trial was had to a jury, with verdict and judgment for the plaintiff for $510. The defendant's motion for a new trial was overruled, and he brings the case here for review by proceedings in error.

On the 29th day of November, 1886, the defendant, Martin Cannon, executed and delivered to Mathew C. Wilbur, the plaintiff below, a written lease of a barn and other improvements, situated on lot 1, in block 205½, in the city of Omaha, for a term of four years from December 1, 1886, in consideration of an annual rental of $720, payable semi-annually in advance. The plaintiff paid the defendant about December 1, 1886, $360 rent in advance, and went into possession of the premises under the lease, and continued to occupy the same until July 30, 1887. Wilbur on this date, with the consent of Cannon, subleased the premises for the remainder of the term to one J. E. Blackman for $1,200 per annum, to be paid, $600 August 1, 1887, and $600 every six months thereafter, until the termination of the lease. It was at the time agreed between Blackman, Cannon, and Wilbur, that Blackman should pay to Cannon the $60 per month rent stipulated

for in the lease entered into between the plaintiff and defendant, and Blackman promised to pay the plaintiff Wilbur the remaining $40 per month of said rent. In pursuance of this arrangement Wilbur vacated the premises and Blackman immediately took possession thereof, and paid to Cannon $360 and to Wilbur $240, being the rent to February 1, 1888. On January 3, 1888, Blackman assigned his lease to one J. H. McShane, and gave possession to him. No further rents were paid to Cannon by either Wilbur, Blackman, or McShane, and about February 8 Cannon demanded possession of the barn from McShane. Possession was surrendered and on the same day McShane again went into possession as Cannon's tenant, and remained until about March 1, when Cannon leased the premises to one Proctor for the period of one year, at a rental of $75 per month. Each lease contained a stipulation to the effect that if the rent should not be paid at the time the same became payable, the landlord should have the right, at his option, to declare the lease at an end and retake immediate possession of the premises.

The plaintiff introduced evidence tending to show that defendant Cannon fraudulently procured Blackman to assign his lease to McShane, in order that McShane might take possession of the property, and then surrendered the same to the defendant; that McShane, in pursuance of that arrangement, took possession and surrendered the same to Cannon, and immediately re-entered as the direct tenant of the defendant.

The defendant strenuously maintains that he entered into no fraudulent arrangement to obtain possession of the leased premises. The circumstances disclosed by the testimony were ample to warrant the jury in finding that the defendant obtained the possession of the premises through undue means. Cannon took McShane to Blackman to purchase his lease. The lease is assigned to McShane, who enters into possession and remains in the occupancy thereof

a short time, when, at the request of Cannon, he volun-
tarily surrenders to him, and on the same day McShane
goes into possession as Cannon's tenant and remains, with-
out paying rent, until Cannon leases to Proctor for $75
per month, an advance of $180 per year over the rent
Wilbur agreed to pay. The day the rent was due from
Wilbur, or the day following, he saw the defendant and
gave him an order on Blackman for six months' rent in
advance, and without notifying the plaintiff that this order
was not paid, or that he intended to terminate the lease,
the defendant secretly takes possession of the premises and
declares the lease forfeited. The plaintiff was two months
in arrears in the payment of his rent at the time the prem-
ises were leased by Blackman, yet the defendant made no
objection thereto. Why such haste to forfeit the lease
without notice when there was a default of but a few days?
Doubtless the increase of $40 per month in the rental
value of the property was the motive that prompted the
defendant's conduct.

As to the right of the defendant to terminate the lease
without giving notice to plaintiff, the court instructed
the jury that, "the right reserved by the terms of the
lease to the lessor, Cannon, was, in case of a failure to pay
rent, or performance of other conditions of the lease by
Wilbur, at his (Cannon's) option to declare the term at an
end, and to retake immediate possession of the premises.
But in order to avail himself of this option it was the
duty of Cannon to give Wilbur reasonable notice that he
would terminate the lease unless the rent was paid or other
conditions complied with, and if he retook possession
without such notice—without Wilbur's consent, he would
be liable for such damages as might be sustained by Wil-
bur by reason of such wrongful act."

It is urged that as the plaintiff had subleased the entire
premises for the balance of his term, he was not entitled to
any notice of forfeiture. Did the subleasing of the prop-

erty have the effect to make Blackman the tenant of the defendant, and to release the plaintiff from all liability on his covenants to Cannon? This must be determined from the intention of the parties. In the lease between plaintiff and Blackman, the latter agreed to pay his rent to the plaintiff. The amount reserved as rent, and the date of payment, were different from that stipulated for in the lease between the plaintiff and defendant. Blackman covenanted to yield possession, at the termination of his lease, to the plaintiff. The lease between the plaintiff and defendant gave the plaintiff an option to purchase the demised premises within a fixed period, at a stipulated price, while the other lease contained no such provision. Again, the defendant received an order from plaintiff on Blackman for the rent, thus recognizing the plaintiff as his tenant, and the one he looked to for his rent. The defendant was aware that the plaintiff had leased the premises to Blackman at an increased rate. Wilbur was holden to the defendant for the payment of the rent. If he was not released from his covenants to pay rent to Cannon, on what principle of law was Cannon released from his obligation to notify the plaintiff of his intention to terminate the lease? The greater is the necessity for this notice when the occupant of the premises is in collusion with the defendant to deprive the plaintiff of his rights. In view of all the facts appearing in evidence we have reached the conclusion that the plaintiff was entitled to notice of the intention of the defendant to declare the lease at an end. The instruction, therefore, stated the law correctly as applied to the facts in the case.

Exceptions were taken to the third and fourth instructions given. They are as follows:

"3. If you believe from the evidence that the defendant Cannon connived with Blackman and McShane or Brown, or with either of them, to obtain possession of the premises described, without the knowledge of Wilbur, and

without having given him any notice of his intention to terminate the lease, or that he had done so, and that thereby Wilbur lost the benefit of the possession of the premises to which he was entitled under the lease, and if you further find that the value of such possession was greater than the rent which he had obligated himself to pay by the terms of the lease, then and in that case the plaintiff would be entitled to your verdict.

"4. If you find for the plaintiff, the rate of damages would be the difference between the rental value of the premises and the amount which, under the terms, he was obligated to pay as rent for the balance of the term, after he was so deprived of the possession."

It is claimed that these instructions were erroneous for two reasons: First, that, under the pleadings and evidence, the plaintiff had no right of action; second, that no evidence was introduced tending to show the rental value of the property.

The defendant unlawfully obtained possession of the premises and canceled the plaintiff's lease, thereby damaging the plaintiff to the extent that the rental value exceeded the amount of rent that the plaintiff promised to pay. It is now firmly settled by the decisions that, where a landlord unlawfully takes possession of the leased premises and withholds the same from his tenant, a cause of action arises in favor of the tenant, and the measure of his damages, ordinarily, is the rental value of the unexpired term less the amount of rent reserved by the lease. (*Mack v. Patchen*, 42 N., Y., 167.) And it makes no difference that such possession was obtained by collusion and fraud.

The undisputed testimony shows that Blackman leased the property at a monthly rental of $100, and that subsequently Proctor rented for a year at $75 per month. No other proof was offered as to the rental value of the property. It is urged that this was not competent evidence. It was certainly competent to prove the price the property

rented for at or near the time the eviction took place. The difference between the rent reserved in the lease between the plaintiff and the defendant and the rent paid by Proctor was $15 per month, which for two years and ten months, the unexpired term of the lease, makes $510, the amount of damages assessed by the jury. The verdict is sustained by the evidence. The judgment is

AFFIRMED.

THE other judges concur.