WYUTA CATTLE CO. v. CONNELL, ET AL.
(No. 1669; May 12, 1931; 299 Pac. 279)
(Rehearing Denied, Sept. 25, 1931)

For the appellant there was a brief by *Lewis Jones,* of Brigham, Utah, *B. H. Jones,* of Ogden, Utah, and *Samuel Corson,* of Evanston, and oral argument by *B. H. Jones.*

For the respondent there was a brief and oral argument by *P. W. Spaulding,* of Evanston, Wyoming.

*Lewis Jones, B. H. Jones* and *Samuel Corson,* in reply.

RINER, Justice.

This case has been brought here by direct appeal to review a judgment of the District Court of Uinta County, in favor of Wyuta Cattle Company, a corporation, plaintiff in

that court, and against Lucile Tobin, one of the defendants there. The litigation arose out of substantially the following set of facts:

During the month of March, 1928, and thereafter, Drusilla Connell and her daughter Lucile Tobin were the owners of certain lands situated in Uinta County, Wyoming, all of which appear to be designated in the record before us as the "Connell" ranch. The daughter resided in Tracy, California, while the mother lived on the ranch in Wyoming. On or about March 16, 1928, pursuant to a newspaper advertisement, Thomas Saxton, the manager of Wyuta Cattle Company, consulted with Mrs. Connell regarding the leasing of this ranch property to his company. The result of this conversation was the signature by Mrs. Connell of the following typewritten memorandum:

"Evanston, Wyoming, March 16th, 1928
RECEIVED from Youta Cattle Company
-------------------------------------------Fifty & 00/100----------------------Dollars
for option on lease to be given said Company on April 1st, 1928, on all Ranch Property on Bear River owned by Lucile Tobin; said lease to be for a rental of $1700.00 per year for a period of six years, half of one years rent to be paid April 1st, 1928, and half of years rental September, 1928, except second half year payment which will be paid July 15, 1928.

$50.00

Lucile Tobin
By Mrs. M. B. Connell
Her Agent."

This was delivered to Saxton, who gave Mrs. Connell a company check for $50 payable to her order, which she cashed. Thereafter Mrs. Connell directed the preparation of a form of lease, which was sent to her daughter in California for the latter's signature and acknowledgment, thereby undertaking to comply with the agreement embodied in the written memorandum. The lease form was signed by the daughter and returned to the mother, who, about April 18, 1928, submitted it to the officials of the Wyuta Cattle Company. This lease form purported to run for three years

only and contained several covenants to which objection was made by the proposed lessee. In an effort to reach an agreement relative to the lease covenants which would be satisfactory to all parties concerned, the representatives of the Wyuta Cattle Company and Mrs. Connell subsequently had an extended conference, after which Dr. Solier, the president of the corporation, himself drew up another form of lease, also for the term of three years, and with covenants therein varying in some respects from those contained in the lease form Mrs. Tobin had executed and to which objection had been made, as aforesaid. This instrument was then— the record is not clear on the matter—either sent to Mrs. Tobin in California by Dr. Solier, or was turned over to Mrs. Connell to send. The testimony in the record for the plaintiff is that Mrs. Connell expressed her satisfaction with the lease form thus prepared. Mrs. Connell, however, says that she told the Wyuta Cattle Company's officers that: "Well it is all right if my daughter wants to sign it that way." However these matters may be, the next day Mrs. Connell advised the officers of the company that she had called up her daughter over the long distance phone and Mrs. Tobin had said that she would not sign any more leases. Thereupon the corporation, by its manager, sent a wire to Mrs. Tobin inquiring as to whether her mother was her authorized agent in the transaction, and insisting on the signature of the lease "as executed." Mrs. Tobin made no response to this inquiry and nothing more was done in the matter until February 25, 1929, when this litigation was commenced by the Wyuta Cattle Company.

The action instituted by the plaintiff was one for damages for breach of the agreement to give a lease as described in the memorandum hereinabove quoted, and was brought against both Drusilla Connell and Lucile Tobin, as defendants, the petition alleging:

"That on March 16th, 1928, defendant Lucile Tobin was, ever since has been and now is the owner of lands situate in the County of Uinta, State of Wyoming, known and de-

scribed as all section fifteen and all section seventeen and all section twenty and all section twenty one except the lot four thereof and except the northeast quarter southeast quarter thereof, all situate in township twelve north, of range one hundred nineteen west of the sixth principal meridian. That on said date the defendants Lucile Tobin and Drusilla Connell were, ever since have been and now are the owners jointly of said northeast quarter of the southeast quarter of said section twenty one. And that on said date defendant Drusilla Connell was the lessee from the State of Wyoming, by its State School Land Board, for all section sixteen in said township and range which lease is for a term to expire January 15, 1931.''

It was also alleged that the defendant Lucile Tobin ''promised and agreed in writing to lease'' all the aforesaid premises to the plaintiff pursuant to the written memorandum aforesaid, which was set forth in the pleading verbatim.

The defendants filed separate answers, in form general denials, but admitting that ''application was made for a lease of the premises in dispute,'' and alleging, ''upon information and belief, that Lucile Tobin, one of the defendants herein, made and executed and delivered or offered to deliver a lease to the plaintiff and that the said plaintiff failed and refused to accept the same.'' A reply was made by plaintiff, putting in issue the above excerpted portion of the several answers.

On January 13, 1930, the case came on for trial before the court without a jury, resulting in the judgment of which complaint is here made. Therein the court found generally in plaintiff's favor, that the plaintiff and the defendant Lucile Tobin ''modified to 3 years the term first intended for said lease,'' that the defendant Lucile Tobin ''wrongfully refused to execute the lease for the modified term according to the provisions of the agreement sued upon,'' and that ''the use of said land was and is reasonably worth to plaintiff for each year of said modified term $1200 per year above the rental to be paid.'' Recovery of

$3750 and costs was adjudged against Lucile Tobin, but it was ordered that the action be dismissed as to Drusilla Connell. The judgment further recited the issuance and levy of a writ of attachment upon the aforesaid real property of the defendants at the commencement of the action, and it was ordered that the attachment be sustained as to—

"all said sections fifteen, seventeen and twenty and all said section twenty one except lot four thereof and an undivided half interest in and to the northeast quarter of the southeast quarter thereof and that an execution issue on this judgment and include an order to the sheriff to sell said attached property of defendant Tobin, or as much thereof as may be necessary, to satisfy this judgment and costs and accruing costs, under the same restrictions and regulations as if the same had been levied upon by execution issuing from this court, and that said attachment as to said lands of defendant Connell being said section sixteen and an undivided half interest in said northeast quarter of the southeast quarter said section twenty one be vacated."

To these findings and judgment the defendant Lucile Tobin reserved her exceptions, the plaintiff, however, excepting only to the finding allowing it to recover damages for but three years. Plaintiff and respondent has made no complaint in this court grounded on its exception just mentioned.

About a week after the case was argued here, plaintiff and respondent filed its motion to dismiss the appeal, alleging several grounds in support thereof which we are now required to consider.

It is claimed that there is "no filing mark upon the transcript that this itself was ever filed in the District Court." But the cover, enclosing the entire record on appeal, including the transcript of evidence, bears no less than two file marks of the clerk of the District Court, showing that the record was filed in his office on the 19th day of June, 1930, and within the record itself, additionally, there is the certificate of the clerk to the effect that "said record on

appeal &ast; &ast; &ast; was filed in my office on the 19th day of June, A. D. 1930.'' As the specified date was one within the time for filing the transcript, as extended by the trial court, in our judgment that part of the record is clearly shown to have been on file in the clerk's office of the court below as required by law.

It is next insisted that there is no certificate that the record contains all the evidence. Section 6405, W. C. S. 1920, of the law governing the procedure on direct appeal, provides in part:

''The party appealing shall cause to be prepared by the official court reporter a complete transcript of all the testimony offered at the trial, with each question consecutively numbered, and showing all rulings of the court in admitting or excluding evidence, or in directing or refusing to direct a verdict for either party, which transcript of the testimony and rulings of the court shall be certified to by the official court reporter as being true and correct, and as containing all of the testimony offered at the trial, with the rulings of the court in admitting or excluding evidence, or in directing or refusing to direct a verdict for either party.''

At the end of that part of the record on appeal which is labelled ''Transcript of Evidence'' appears the certificate of the official court reporter, stating that the transcript ''is a full, true and complete transcript of the proceedings when this case was called for trial on October 14th, A. D. 1929, and of the testimony offered in the subsequent trial of said matter, including all testimony offered or admissions made by either side, all objections to the introduction of evidence, all rulings of the court thereupon, and exceptions taken thereto.'' It will be observed that the law does not refer to the transcript as a transcript of the evidence, but repeatedly as a ''transcript of the testimony.'' Frequently the words ''testimony'' and ''evidence'' are used synonymously, although, as pointed out by previous decisions of this court relative to the necessary certificates to be attached to bills of exceptions in proceedings in error, technically the word

"testimony" has a more limited meaning than the word "evidence." See Oklahoma Gas & Electric Co. v. Bates Expanded Steel Truss Co., (D. C.) 296 Fed. 281; Crumley v. State, 18 Ala. Ap. 105, 89 So. 847; Dial v. Gardner, 104 S. Car. 456, 89 S. E. 396; Grayson v. Durant, 43 Okla. 799, 144 Pac. 592; McCague Investment Co. v. Mallin, 23 Wyo. 201, 147 Pac. 507; Royal Ins. Co. v. Walker Lumber Co., 23 Wyo. 264, 148 Pac. 341.

The decisions of this court relative to certificates to bills of exceptions are not applicable here for there is no provision in the direct appeal procedure for any bill of exceptions and it is not required. Barnett v. Bankers Finance Assn., 38 Wyo. 511, 268 Pac. 1025. Inasmuch as the official court reporter has certified the transcript substantially as the law itself directs him to do, we are not inclined to think that his certificate is defective, as argued.

Finally it is urged on behalf of the motion to dismiss, that the transcript aforesaid is not certified by the clerk of the District Court to be true and correct, as required by law. W. C. S. 1920, § 6406; McClintock v. Ayres, 34 Wyo. 476, 245 Pac. 298; The W. H. Holliday Co. v. Bundy, et al., 289 Pac. (Wyo.) 1094, and cases cited.

The record on appeal, including the final certificate of the court reporter previously mentioned, embraces 191 pages. On page 33 thereof, following the specification of errors, index to record on appeal, original pleadings, certified copy of the judgment, notice of appeal, copies of sundry motions and orders, there appears a certificate of the clerk, relative to the "foregoing record on appeal," stating, among other things, that "said record on appeal is true and correct"—the proper form of clerk's certificate to a record on appeal, as prescribed by Section 6406, supra. The "Index to Record on Appeal" which precedes this certificate of the clerk lists, as contained on pages 34-191 of the record, the "transcript of evidence," and it may be that this statement is sufficient to carry forward the transcript by reference, so that it should be considered as preceding the certifi-

cate of the clerk and so properly certified. It is true, generally, that the final certificate of the clerk to the record on appeal should be found at the close of the entire record.

The real trouble here seems to be, that either the clerk's final certificate or the transcript of evidence has merely been bound into the record in the wrong place. Where certain pages of the transcript were inadvertently placed after a court reporter's certificate, instead of before it, the court, regarding the certificate as effective to include the misplaced sheets, said on rehearing in Martin v. New York Life Insurance Co., 30 N. Mex. 400, 234 Pac. 673, 677, 40 A. L. R. 406:

"It has been held that the inadvertent transposition of certificates, or the inadvertent misplacing of a clerk's certificate or the transposition of the certificate of the official reporter and the order of the judge, does not affect the authenticity of the record or the completeness of the record so certified. Guthiel v. Dow, 177 Ind. 149, 97 N. E. 426; Winters v. Means, 50 Neb. 209, 69 N. W. 753; Clements v. Collins, 59 Ga. 124."

It is perfectly plain, from the index to the record on appeal aforesaid, that it was the intention of the clerk to include in the record the "transcript of evidence," and, of course, to certify the same. Reference has already been made to the case of Royal Insurance Co. v. Walker Lumber Co., 23 Wyo. 264, 148 Pac. 341. That case came before this court again, and in 24 Wyo. 59, 155 Pac. 1101, 1102, Ann. Cas. 1917E, 1174, describing the procedure therein taken, this court said:

"The judgment was affirmed on a former hearing on the ground that the bill of exceptions failed to show that it contained all the evidence necessary to a determination of the errors assigned. 23 Wyo. 264, 148 Pac. 340. On the petition of plaintiff in error a rehearing was granted, and upon its motion the bill was ordered returned to the District Court to permit an application to be made and heard in that court for an amendment of the bill and a rearrange-

ment of the pages thereof, which it was claimed had been disarranged when binding the same together with permanent covers after the bill was allowed and signed. The bill having been amended and returned to this court, now showing that it contains all the evidence including the exhibits, the cause has again been submitted.''

From the foregoing it would appear that the misplacing of a proper certificate to the record, such as apparently has occurred here, is merely an amendable defect, and as the point was not raised until after argument and submission of the case, it is waived. Cooper v. Cooper, 86 Ind. 75; Lewellyn v. Lewellyn, Admr., 87 Mo. App. 9; Yates v. Kinney, 23 Neb. 648, 37 N. W. 590, 4 C. J. 502-3, §§ 2262-3 and cases cited.

The motion to dismiss must be denied.

Passing to a consideration of the case upon its merits, the action is based, as we have seen, upon whatever rights the plaintiff obtained through the execution by Mrs. Connell of the above quoted ''option on lease'' dated March 16, 1928. The first question which naturally occurs to the mind upon inspection of that document in connection with the record presented, is whether Mrs. Connell was vested with the necessary authority, as agent, to bind Mrs. Tobin to execute a lease for the period and under the terms the writing required. Where an agreement to give a lease is made, respectable authority would indicate that the parties to the agreement are entitled to have incorporated in the proposed lease the usual covenants, even though the agreement contains no stipulation to that effect. I Tiffany, Landlord and Tenant, p. 395, § 68, and cases cited. The present prevailing usage of the locality, the character of the property, and, it may be, other matters, will necessarily govern as to just what covenants are to be regarded as ''usual''.

From the record in this case, it is very far from clear that Mrs. Connell had due authority from her daughter to execute the instrument she did. On cross-examination, Mrs. Connell testified that whenever a lease for a year was sought

on the Tobin property, the necessary papers would be sent on to California for the daughter's signature, after having been prepared under the latter's instructions. Mrs. Tobin herself stated on the witness stand, likewise on cross-examination, that her mother told her, by letter, that she had given an option for a lease for $50 "to bind it for so many days;" that Mrs. Tobin so understood the arrangement and thereupon authorized her mother, under certain instructions, to prepare a lease and she (Mrs. Tobin) would sign it. Although it is unnecessary to mention them in detail here, it is quite evident that the lease Mrs. Connell prepared and the one Mrs. Tobin signed contained covenants that could hardly, in any locality, be considered as usual. The same is true of the lease form prepared by the plaintiff's officials. Whether the mother was authorized to give an agreement for a lease containing only usual covenants and for six years, is left by the record, as it now stands, in serious doubt. The fact that Mrs. Connell sold property of various kinds from the ranch or even made short-term leases, hardly establishes the necessary authorization to do what she did in executing the paper of March 16, 1928. Indeed, the wire sent by plaintiff to Mrs. Tobin, when the latter declined to sign any more lease forms, shows that plaintiff itself was not clear as to the authority vested in Mrs. Connell. It is unnecessary to cite authorities to the point that ordinarily one dealing with an agent is bound to ascertain the extent of the agent's authority. It is not clear, either, that plaintiff, by redrawing the proposed lease and submitting that as a counter-offer, did not intend to waive any rights it might have had under the "option on lease" aforesaid. However these matters may be, it becomes unnecessary to pass upon them at this time, for reasons presently to be mentioned. On a retrial of the case, some of these uncertainties may possibly be removed.

Counsel for plaintiff and respondent, after introducing in evidence sundry records of deeds to show the state of title of the lands affected by this litigation, then stated to

the court that these records showed "that at the present time Mrs. Connell is the owner of an undivided one-fourth in all of the lands involved." An examination of the deeds so received in evidence would appear to establish that while Mrs. Connell does not have an undivided one-fourth interest in all the property involved in this lawsuit, she does seem to have that interest in a substantial portion of several of the sections of land as to which the attachment by the court's final judgment in this case was sustained and ordered sold, as heretofore recited. By that judgment the action was dismissed as to Mrs. Connell, but it would appear also thereby that her property was nevertheless ordered sold to satisfy a judgment entered only against her daughter. This, of course, cannot be done.

A further complication, resulting from the one-fourth undivided interest thus held by Mrs. Connell in the lands involved is found when the plaintiff's proof as to the damages it claims is inspected. The measure of damages demanded by it and applied by the trial court in this case seems to have been the probable profit the plaintiff could have made through its use of the leased premises as a ranch, less the stipulated rental for the three-year term, to which the court found the parties had agreed to modify the stipulation contained in the original memorandum. In making these proofs, no attempt was made to show what profits could be made from the lands owned solely by Mrs. Tobin and those in which she had an undivided three-fourths interest. There appears to be no proof whatsoever in the record in that respect, but all inquiries were directed to develop the profits which might have been earned from the use of all the lands involved—both those owned by Mrs. Tobin and those owned by Mrs. Connell. Obviously, with the record in this condition, there was afforded the trial court no means of ascertaining what the correct amount of damages should be and the judgment is erroneous as concerns that matter.

Again, what has just been said does not take into account whether a proper measure of damages was applied by the trial court herein. What that was has already been stated. We are obliged to reach the conclusion that the court was mistaken as to what measure of damages might properly be used in the case. The instrument sued on—assuming here that it was executed under due authority—was nothing more than an agreement on Mrs. Tobin's part to give a lease upon certain property owned by her, the plaintiff having the election to take it or not within the specified time, as it saw fit. Now the measure of damages in such a case, and where, as here, no rent was paid, no possession of the premises taken, and the lessee has been to no expense in preparing to occupy them, is, as stated in 16 R. C. L. 559, § 29, thus:

"While there is authority to the effect that only nominal damages can be recovered for breach by the lessor of his agreement to give a lease, yet according to the great weight of authority the lessee is entitled to recover as damages the actual value of his bargain as shown by the difference between the rent he has agreed to pay and the actual rental value of the premises."

So in I Tiffany, Landlord and Tenant, p. 391, § 67, it is said:

"The measure of damages for the lessor's breach of a contract to give a lease would, in most states, no doubt, be the value of the bargain lost to the proposed lessee, that is, the difference between the rental value of the premises for the term and the rent agreed to be paid."

See also Indian Head Mills v. Hamilton, 212 Ala. 97, 101 So. 747; Peterson v. Larquier, 257 Cal. App. 873; Scottish American Mortgage Co. v. Taylor, 74 S. W. (Tex. Civ. App.) 564; Knowles v. Steele, 59 Minn. 452, 61 N. W. 557; Williams Wagon Works v. Gunn, 14 Ga. App. 158, 80 S. E. 668; James H. Heron Co. v. Jones, 28 Ohio App. 190, 162 N. E. 624.

In Smith v. Hughey, 66 Ore. 408, 134 Pac. 781, Ann. Cas. 1915B, p. 804, a lessor failed to put his lessee in possession of the leased premises, and the trial court instructing the jury concerning the measure of damages stated that it was "what is the reasonable value of the use of the leased premises" for the period the lease was executed upon the property, less the rental agreed to be paid. Holding this instruction to have been erroneous and in reversing the judgment, the court said:

"The value of the use and occupation of the land was its actual rental value in the market, and the amount of plaintiff's recovery would be that rental value, less the $600 which he had agreed to pay: Alexander v. Bishop, 59 Ia. 572, 13 N. W. 714; Kenny v. Collier, 79 Ga. 743, 8 S. E. 58; Huiest v. Marx, 67 Mo. App. 418; Cannon v. Wilbur, 30 Neb. 777, 47 N. W. 85; Smith v. Phillips, 16 Ky. L. Rep. 615, 29 S. W. 358. The probable profits of a business not in actual operation depend so much upon the capacity of the party proposing to engage in it to conduct it successfully, and so great a variety of circumstances which make for succcess or failure, that evidence of that character is usually rejected as too speculative and remote. The plaintiff had leased the land for dairy purposes. By the act or mistake of defendants he had been prevented from using it for such purposes. The inquiry should have been confined to the rental value of the land for that purpose—what rent it would command in the market from persons seeking a farm for that purpose. Evidence showing the quality of the land, its acreage, product and capabilities as a dairy farm, would be admissible as bearing upon its probable rental value and should have been confined to that purpose; but evidence as to what plaintiff or anyone else could have made upon it, as a basis for substantive damages, was inadmissible, and the instruction given that the measure of damages was what the plaintiff could reasonably have made off the place as a dairy farm was erroneous."

Appended to the foregoing case, in Ann. Cas. 1915B, at page 805, is an elaborate note on the measure of damages recoverable by the tenant for failure of the landlord to de-

liver possession. On the authority of a voluminous list of
cases it is therein stated that:

"The measure of damages ordinarily recoverable by a
tenant for the failure of his landlord to deliver to him the
possession of the leased premises is the excess, if any, of the
actual rental value of the premises over and above the rent
reserved and agreed upon."

In the same note, referring to the Smith v. Hughey case,
supra, we find it said:

"As stated in the reported case, 'probable profits,' based
on a speculative estimate of what the lessee could have made
through the agency of the leased premises, is an element
usually excluded from the measure of damages recoverable
upon a lessor's failure to deliver possession."

Ample authority is then cited in support of the state-
ment. See also 53 L. R. A. 97, note; Sloan v. Hart, 150 N.
Car. 269, 63 S. E. 1037, 21 L. R. A. (N. S.) 239, 134 A. S.
R. 911; Jarvas v. Tormey, 13 Ont. W. R. 432; Becker v.
De Forest, 31 N. Y. Super. Ct. 528; North Chicago St. R. R.
Co. v. Le Grand Co., 95 Ill. App. 435; Rhodes v. Baird, 16
Ohio St. 573.

There was no direct proof of and no finding as to the
actual rental value of the land solely owned by Mrs. Tobin,
and also that in which she had a three-fourth's interest,
which, as Mrs. Connell did not undertake to bind her own
property by the memorandum she signed, was the only real
estate which could possibly be considered in this action.
The proofs, as received in evidence relative to what plain-
tiff could have made upon the land, could not, as said in
Smith v. Hughey, supra, be used as a basis for substantive
damages, though doubtless admissible to aid the court in
determining the actual rental value of the property when
limited to the lands which Mrs. Tobin owned and held an
interest.

As in our view of this record, the judgment is erroneous, it must be reversed and the cause remanded to the District Court for a new trial.

*Reversed and Remanded.*

KIMBALL, C. J., and BLUME, J., concur.

ON PETITION FOR REHEARING

RINER, Justice.

An order has been entered denying the petition for rehearing in this case. We have given careful consideration to the reasons assigned for granting a rehearing, but we are unable to see that it would be of service herein, convinced as we are that the views heretofore expressed concerning the case correctly determined the law thereof upon the record before us.

It is urged that this court rendered its decision upon points neither assigned nor argued as error by appellant, contrary to the rule applied in many of our previous decisions. Automobile Insurance Co. v. Lloyd, 40 Wyo. 44, 273 Pac. 681, and cases cited. But we find in the record assignments of error challenging the sufficiency of the judgment under review as contrary to law and as not sustained by the evidence in the case. Those assignments are discussed in the brief of counsel for appellant, and while some of the reasons advanced in such discussion in support of them were not deemed by us of weight, still our attention was directly called to the claims of error therein set forth and required their consideration. It would seem strange that this court should be confined in examining and disposing of them solely to the argument and reasons put forward by appellant. Such a view might easily be productive of incorrect and unjust conclusions here. As said by the Kansas City Court of Appeals, in Schaff v. Nelson, 285 S. W. (Mo. App.) 1036, in discussing an instruction which it held was erroneous and required a reversal of the judgment below:

"While the instruction is challenged, it is not attacked on the ground upon which we have declared it faulty, but the Supreme Court, in Stid v. Rd., 236 Mo. 382, 398, 139 S. W. 172, 176, said:

" 'The impropriety of instruction numbered 1 given for the plaintiff is urged in the briefs. Defendant says that such instruction is erroneous, and assigns some reasons therefor. That it is erroneous we have no doubt, but as to the reasons assigned in the briefs, all of them may not be tenable. But be this as it may this instruction is properly challenged in the record, and the court may seek its own reasons for condemning it, if it be one which should be condemned. The reasons assigned here may be bad, but if there has been an exception to the action of the trial court in giving the instruction, such exception goes to the whole matter and the instruction may be condemned here for any reason which is apparent to this court.' "

One of the principal grounds upon which this court predicated its reversal of the judgment below was because of the application by the trial court to the proofs of an incorrect measure of damages. As to what should be the true measure of damages was argued in respondent's brief and our consideration of the question invoked thereby.

Further, the rule that errors assigned but not discussed in the brief of appellant are deemed abandoned, is itself not inflexible when those errors are extremely serious in character and appear unmistakably and clearly upon the face of the record in the course of the reviewing court's investigation of it. That this is so is repeatedly evidenced by the decisions of other appellate courts possessing a rule of practice similar to our own and to which reference has above been made.

In Philbrook v. Randall, 195 Cal. 95, 231 Pac. 739, it was said concerning a rule of this character:

"The appellate court cannot be expected to prosecute an independent inquiry for errors upon which the appellant may possibly be relying. It will notice only those assignments pointed out in the brief, and all others are deemed to have been waived or abandoned. However, this rule is

subject to limitation, and the court is at liberty to decide a case upon any points that its proper decision may require, whether taken by counsel or not. Hibernia Savings & Loan Society v. Farnham, 153 Cal. 578, 96 Pac. 9, 126 Am. St. Rep. 129, 2 Cal. Jur. 729.''

In Lewis v. Lewis, 166 N. W. (Ia.) 107, the rule and its limitations were quite fully considered, the court saying:

''We are well aware of the rule by which it is usually held that a failure to raise a point in argument is deemed to be a waiver, but this ought not to have absolutely universal application. Otherwise the parties, by collusion, or by oversight, or carelessness, may lead the court to commit itself to some indefensible doctrine. And it may well happen, and we think it does in the instant case, that the court, in defense of sound legal principles, may consider fundamental propositions which have been overlooked or omitted by counsel. A case in point is Big Creek Stone Co. v. Seward, 144 Ind. 205, 43 N. E. 5, where it was claimed by counsel that a point in regard to the sufficiency of the pleadings was waived because not argued, and the court said:

'' 'It may be inquired, therefore, should the court be controlled by a rule which would estop counsel and parties to the extent that it should hold sufficient a state of facts which plainly disclosed that no cause of action existed? Most certainly not. While we are not obliged to search for errors not made manifest by the record as the appellant brings it to us, we are not so restricted by that rule that we are required to hold a pleading sufficient when it is clearly insufficient, and when to do so would create a precedent well calculated to mislead the profession and lend confusion to well-settled principles of pleading and practice. When an error is presented by the record, the case is decided upon the record, and not upon the argument of counsel; but, when a question is not argued and does not occur to the court in its investigations of the record, a rehearing will not be granted to permit a discussion of such question. * * * In this case the sufficiency of the complaint was duly presented, and it was palpably bad. To have held it otherwise would have been a perversion of justice. If the court were limited to the arguments and reasoning of counsel in its decisions of cases, to the exclusion of its own observations, many cases would lead us far from what we understand to be the true object of the court.' ''

In King Solomon Tunnel & Development Co. v. Mary Verna Mining Co., 22 Colo. App. 528, 127 Pac. 129, the same subject was treated in the following language:

"Appellee also invokes the well-established general rule that appellate courts will not consider errors assigned, but not discussed in the printed briefs or on oral argument. Notwithstanding these general rules, we do not think they are at all times and under all circumstances inflexible. The appellate courts may in their discretion, and sometimes do, disregard the same, in order to prevent a miscarriage of justice. Allen v. Tritch, 5 Colo. 222; Groth v. Kersting, 23 Colo. 213, 47 Pac. 393. We think the substantial rights of litigants are of greater weight than the inadvertence or omissions of their attorneys. We are satisfied that the record here justifies the court in considering the same in formulating its opinion, although the rule may have been disregarded by appellant. We will concede that appellant failed, both in its printed brief and on oral argument, to discuss the eighth assignment of error next thereinafter mentioned."

An extreme case, involving a very plain transgression of the rule, is that of Samuell v. Moore Mercantile Co., 62 Mont. 232, 204 Pac. 376, and yet the court said:

"Counsel for appellant have disregarded the rules of this court in the most flagrant manner. Neither of the two so-called assignments of error presents any question for review (Rogness v. Northern Pac. Ry. Co., 59 Mont. 373, 196 Pac. 989), and their brief is practically devoid of argument and does not contain the citation of a single authority in support of their position. This court ought not to be called upon to do the work which counsel are employed to do, and with perfect propriety we might affirm the judgment and order without reference to the merits, and justify our decision upon reason and numerous decisions of this court and other courts of last resort; but it is apparent to us that plaintiff has suffered grievous injury in the destruction of his crops, and he should not be penalized further for failure of his counsel to discharge their duty. We therefore assume the burden of original investigation to determine the character and extent of his rights and the propriety of the remedy which he has invoked."

And the Court of Civil Appeals of Texas, in a comparatively recent case, Rogers v. Day, 34 S. W. (2d Series) 310, remarks concerning its procedure touching the rule in question:

"The view we have of the merits of this appeal is perhaps not presented by the assignments of error and propositions submitted in appellant's brief, but the erroneous nature of the judgment rendered is apparent upon inspection of the pleadings and the judgment. The error is therefore fundamental and calls for reversal, regardless of any possible deficiency of proper presentation in the brief."

See also Cook v. Moulton, et al., 64 Ill. App. 429; Lewis v. City and County of San Francisco, 2 Cal. App. 112, 82 Pac. 1106; State ex rel. Burg v. City of Albuquerque, 31 N. Mex. 576, 249 Pac. 242; Purcell v. Hoffman House, et al., 89 N. Y. S. 975.

In the light of the foregoing authorities, we are not inclined to believe that we have passed beyond judicial precedents in deciding this case as set forth in the opinion previously filed herein, or in declining to grant the petition for a rehearing.

*Rehearing denied.*

KIMBALL, C. J., and BLUME, J., concur.