437 P.2d 856 (1968)
LARAMIE PRINTING TRUSTEES, Laura B. Holliday, L.J. Holliday, and Robert W. Costin, Appellants (Plaintiffs below),
v.
Max L. KRUEGER, Aliene W. Krueger, and Wyoming Stationers, Inc., a Wyoming Corporation, Appellees (Defendants below).
No. 3562.
Supreme Court of Wyoming.
February 28, 1968.
*857 David N. Hitchcock, Laramie, for appellants.
George J. Millett, of Pence & Millett, Laramie, for appellees
Before HARNSBERGER, C.J., and GRAY, McINTYRE and PARKER, JJ.
Mr. Justice GRAY delivered the opinion of the court.
Plaintiffs appeal from an adverse judgment entered by the trial court in an action brought by them against the defendants to recover unpaid rent under a claimed long-term lease of certain business premises situate in the city of Laramie, Wyoming.
The salient facts are uncontroverted. On or about February 2, 1954, the Laramie Printing Company, a corporation (predecessor in interest of the plaintiffs), as owner of the premises involved, was desirous of disposing of a printing and bookbinding business it was then conducting on the second floor of the said premises and on such date the stockholders and officers of the corporation agreed that they would sell all of the tangible assets owned by the corporation and used in such business to the predecessors in interest of the defendants. In keeping therewith the stockholders and officers of the corporation and defendants' predecessors entered into an agreement entitled "PRELIMINARY SALE AGREEMENT." We are not here concerned with the terms of the sale of the personal property, but intermingled with the provisions relating thereto were provisions relating to some proposed alterations of the premises by the sellers and to the leasing by the sellers to the purchasers of that portion of the premises theretofore used for the carrying on of such business. It is the latter provisions that are of significance in disposing of the questions presented as will later be shown, and while we shall not undertake to set forth the entire agreement, reference is made to those provisions deemed important which are embraced in Paragraphs 2B, C, and D. The introductory portion of said paragraphs reads as follows:
"It is understood and agreed that parties of the first part shall arrange for and prepare a more comprehensive contract embodying all details and provisions of the sale agreement outlined herein, after *858 completing their study and consideration of the various legal and accounting problems involved, and that parties of the second part shall execute such contract promptly, when presented to them, and that such agreement shall include the following, among other pertinent provisions:"
Subparagraphs B and C dealt with the proposed alterations above mentioned; arrangements for suitable means of ingress to and egress from the premises; and the right to use and remove certain personal property located in the basement of the premises.
Subparagraph D, which as we view it forms the crux of the parties' dispute, provides as follows:
"Parties of the first part shall arrange for and deliver to parties of the second part, as lessees, a valid and effective written lease for the printing shop premises on the second floor of said building, which shall, among other things; (1) give lessees the right of passage and delivery through the sidewalk, elevators and cellar described in the preceding paragraph, and of temporary access through and use of mezzanine office in the present store at 221 Grand Avenue until completion of the new office and stairway at the north boundary of the building; (2) extend for a term expiring at midnight on December 31, 1963 at a rental of $100.00 per month; (3) provide that the lessor or lessors shall be responsible for property taxes and assessments on the leased property and for maintenance, repair and upkeep of the walls, windows and roof of the building, and that lessees shall be responsible for their own telephone, heat, light and other utility services, and for interior repairs, remodeling, redecorating and upkeep, and all of their own operating expenses."
Although plaintiffs allege in their complaint that the purchasers took possession of the premises and paid the monthly rental fixed by the agreement, the date is not fixed. All that appears in the record in this respect is the defendants' admission that they took possession of the premises (presumably on or about July 29, 1954, when they succeeded to the interest of the purchasers) and paid such monthly rental through September 1959, when they apparently vacated the premises. By the assignment which was accepted by the sellers, the defendants agreed in writing to "assume the obligations of" the purchasers as contained in the preliminary sale agreement.
During the period February 2, 1954, through July 1954 the sellers made no effort to have prepared and delivered to the purchasers the lease which the agreement contemplated and it was not until May 25, 1956, some twenty-two months after defendants had entered upon the premises that the attorney for the sellers submitted to Max L. Krueger, one of the defendants, through his attorney, a proposed form of lease which had been properly executed on behalf of the selling corporation. For our purposes we need not set forth all of the terms and conditions of the lease except to say that with one minor exception relating to the corporation's responsibility for replacing "windows," the proffered lease substantially embraced the matters set forth in the preliminary agreement and in addition thereto fixed the time and place for payment of the monthly rental; limited the use of the premises to the business described unless by written consent of the lessor; made provision with respect to insurance and the obligations of the parties in the event the premises were damaged by fire; provided for the reentry of the premises in the event of lessees' default; and provided for the imposition of expenses and attorney fees for reentry of the premises in the event that lessors elected to terminate the lease for breach of covenants by the lessees.
Sometime in June 1956 Max Krueger, after making some "penciled notations, changes, strike-outs, and so forth" on the proposed form, returned the same to the attorney for the sellers and lessors with a penciled notation on the letter by which *859 his attorney had transmitted to him the proposed lease which read:
 "Dave
 Here is the slightly mutilated lease
 Max"
Following this no effort was made by the corporation to prepare and submit to the defendants a revised form of lease.
In the trial of the case plaintiffs offered no testimony concerning the circumstances existing at the time the sellers and the purchasers entered into the preliminary sales agreement or what those parties did pursuant to such agreement. Their case was submitted to the trial court on the basis that the instruments described and the admissions of the defendants constituted an enforceable lease for a term beginning on February 2, 1954, and ending on December 31, 1963. The claim of plaintiffs was resisted by the defendants on the ground that the defendants or their predecessors had never entered into a written lease of the premises with the lessor; and defendants also asserted that the plaintiffs' claim was barred by the statute of frauds, by estoppel, and by laches.
In presenting their claim of error here the plaintiffs have devoted their brief and argument almost entirely to the proposition that the instruments above described constituted a memorandum of a long-term lease of the premises subscribed by the parties to be charged sufficient to meet the bar of the statute of frauds. Section 16-1, W.S. 1957.
We have no quarrel with the rule advanced in support of their argument to the effect that a "memorandum" of an oral agreement need not be entered into contemporaneously with such agreement or that the "memorandum" may consist of several related writings connected with each other and connected with the subject matter of the transaction. Mead v. Leo Sheep Co., 32 Wyo. 313, 232 P. 511, 513, 514. We fail to see, however, how the plaintiffs can profit from that rule under the circumstances of this case.
There is no evidence of an oral agreement between the sellers and the original purchasers of their business with respect to the terms and conditions of the contemplated lease other than the permissive inference that the parties did orally agree in general language to the terms and conditions that were set forth in the preliminary sales agreement. The significance of that circumstance upon plaintiffs' claim that there was an enforceable long-term lease is readily apparent. If there was such a lease it necessarily had to come into existence during the period February 2, 1954, through July 1954 for the reason that the obligations assumed by the defendants so far as a lease upon the premises was concerned were the obligations of their predecessors under the preliminary sales agreement, and if their predecessors had not entered into a long-term lease then, of course, there was no long-term lease that could be enforced against the defendants.
With respect to this we do not overlook the possibility that even so, one of the obligations assumed by the defendants might well have been an executory agreement by their predecessors to enter into a lease, but we are not disposed to consider whether or not plaintiffs had a claim against the defendants on that score. As indicated above, the theory advanced to the trial court in support of their right to recover was that they had a valid and enforceable long-term lease and as a general rule when the litigation gets to us the parties are bound by the theory advanced below. Burnell v. Roush, Wyo., 404 P.2d 836, 839; In re Linda Coal and Supply Company, 3 Cir., 255 F.2d 653, 657. We find ample justification under the circumstances here to adhere to such rule. The dilemma in which plaintiffs found themselves at the time the defendants vacated the premises was of their own making. Under the plain terms of the agreement their predecessors were duty bound to present to defendants' predecessors "a valid and effective written lease," which was never done; and even assuming there was some special relationship *860 between the original parties to the agreement that might explain such default, surely there was ample opportunity in the early relationship of landlord and tenant between the plaintiffs' predecessors and the defendants to negotiate and agree upon such lease.
The critical question then is whether or not the preliminary sales agreement was a present lease with the right of possession to commence immediately or in the future. Ordinarily the solution to the problem is primarily a matter of the intention of the parties as ascertained from the writing as a whole. Bornel, Inc., v. City Products Corporation, Wyo., 432 P.2d 489, 492; 3 Thompson on Real Property, § 1062, p. 232 (1959 Replacement). While there is lack of unanimity in the authorities, it appears generally to be recognized that if the preliminary writing contains all of the essential terms of a lease, it will be regarded as a present lease. 3 Thompson on Real Property, supra, at p. 230. The essential terms are said to be description of the property, the duration of the term, the rental consideration, and agreement of the parties. D'Anna v. Nungesser, La. App., 144 So.2d 568, 569; Bennett v. Pratt, 228 Or. 474, 365 P.2d 622, 624; Granva Corporation v. Heyder, 205 Va. 660, 139 S.E.2d 77, 79-80. The theory underlying such rule is that the courts will imply the usual covenants contained in leases utilized in the community for the character of the property involved. Reno Club, Inc., v. Young Inv. Co., 64 Nev. 312, 182 P.2d 1011, 1020, 173 A.L.R. 1145. In fact, such rule was recognized by this court in Wyuta Cattle Co. v. Connell, 43 Wyo. 135, 299 P. 279, 282, rehearing denied 3 P.2d 101.
However, under the circumstances of this case it is readily apparent that the plaintiffs could not recover rental subsequent to the time that the defendants vacated the premises, whether we construe the preliminary agreement to show the intention of the parties to have such writing constitute the consummation of their leasing arrangement or whether we hold that the intention of the parties was nothing more than an agreement to enter into a lease. This for the reason that the agreement itself provided for the duration of a period of approximately ten years. Under the provisions of § 34-2, W.S. 1957, a lease for a term in excess of three years is a "conveyance" of an interest in real estate and § 34-36, W.S. 1957, provides: "No covenant shall be implied in any conveyance of real estate * * * whether such conveyance contains special covenants or not." Consequently, in this jurisdiction at least, the rule of implication is not without limitation, and that was settled in Wyuta Cattle Co. v. Connell, supra. There, as here, the preliminary agreement set forth the essential terms of a lease and the duration was fixed as a period of six years. The proposed lessee brought an action for damages for breach of the agreement on the part of the proposed lessor, and in the trial of the case the trial court found in favor of the plaintiff but unquestionably upon the basis of the statute limited plaintiff's claim to a period of three years from "the term first intended [six years] for said lease." Although the force and effect of the statutory provisions were not specifically discussed by this court, such holding was approved. The judgment was reversed and remanded for new trial on other grounds. In the instant case we need not decide whether the tenancy was a month-to-month tenancy or something more. The undisputed fact is that the defendants paid rent in excess of a period of three years and consequently even though the trial court contented itself with a general finding, we are persuaded that it properly concluded there was no lease binding the defendants as lessees to the long-term lease claimed by the plaintiffs.
Other points have been raised, but in view of the foregoing we find it unnecessary to consider such matters. The judgment of the trial court is affirmed.
Affirmed.