Meier Stein-brink, Spec. Ref.
Let the record show that in this action at the conclusion of the trial both counsel, for reasons that are obvious from the evidence, asked for an early and prompt decision. I say that because what I am about to dictate is not in erudite or polished form.
This action was begun by the plaintiff as against the defendant for an alleged violation of the provisions of the Feld-Crawford Act (General Business Law, § 369-a et seq.). In it the plaintiff asks for a permanent injunction restraining defendant from advertising, offering for sale or selling certain of plaintiff’s products at less than the prices stipulated in its fair-trade contract. No damages are asked for.
The action is brought under sections 369-a and 369-b of the General Business Law of the State of New York. Except as to one vital issue hereafter referred to there is little dispute as to the facts.
Plaintiff is the manufacturer of men’s shirts under the trademark ‘ ‘ Arrow ’ ’. Under this general trade-mark it manufactures and sells various classes and styles of shirts known by subsidiary trade-marks such as “ Dart,” “ Par,” and many others.
On January 28, 1955, it entered into a. fair-trade agreement with a New York City department store retailer providing for rmrnmrrm prices for the sale in New York State at retail of some but not all of its men’s shirts. This agreement is still in effect although the schedule has been amended on two occasions.
The proof establishes that plaintiff manufactures and sells many styles and kinds of men’s “Arrow” shirts, “perhaps several hundred,” but that only a few are price-fixed. These however, are the most popular and account for approximately 80% of the total sales of all “ Arrow ” shirts.
Notice of the establishment of a fair-trade price maintenance agreement was given by plaintiff to its many New York State customers and a general press release dated July 27, 1956, seems to have resulted in three very short, about one and one-half inch long, news items published about August 1, 1956, to the effect that plaintiff, starting August 1, would fair-trade certain of its varieties of shirts.
*147 Defendant owns and operates three large cash-and-carry department stores. It had never sold “Arrow” shirts prior to March, 1957, although it did sell other men’s shirts, none price-fixed. After some negotiations with an exporter, Colamerica Company, it purchased on March 13, 1957 approximately 200 dozen of “Arrow” men’s shirts of which approximately 147 dozen were of the varieties covered by plaintiff’s fair-trade agreement and approximately 53 dozen were not so covered and are not affected by this action.
The shirts were delivered to defendant on March 15 and paid for on March 19. They were all put on sale and prominently featured in defendant’s advertisements on April 5 and 12 at a price considerably less than the fixed price applying to some of them.
The matter being brought to plaintiff’s attention, it promptly notified defendant by registered mail (letter dated April 5 and apparently received by defendant on April 8), that certain of its “ Arrow ” shirts were subject to a fair-trade contract with minimum resale prices specified.
Defendant continued to advertise and sell the shirts, including those price-fixed, at prices below the specified mínimums and this action followed. A motion for a temporary injunction was denied and a prompt trial ordered.
The disputed issue of fact hereinbefore mentioned is whether or not at the time of its purchase of the shirts in question defendant knew that they were subject to a fair-trade agreement. Defendant strenuously maintains that it had no such knowledge and the testimony offered on its behalf through the witness Shuknan and the witness Baruchin to that effect was unshaken on cross-examination.
Plaintiff could offer no proof of direct knowledge on the part of defendant prior to the receipt by it of plaintiff’s letter of April 5 but argues that defendant must have known of the fair-trade agreement and, in any event, has not shown that it did not have such knowledge. I agree that lack of knowledge of the fair-trade agreement prior to the purchase of the articles in question is a matter of affirmative defense.
On the proof before me I must find, however, and I do find that defendants had no such knowledge in March of 1957 when it purchased the shirts in question or any time prior thereto and that the first knowledge it had of any fair-trade agreement affecting this price was when it received plaintiff’s letter dated April 5.
Plaintiff further contends that knowledge or lack of knowledge on the part of defendant at the time of purchase of the *148 articles is immaterial and that all that is required to be shown to entitle it to an injunction is the fact that after April 8 defendant sold the articles in question below the price fixed in the fair-trade agreement.
The issue is one at law and does not appear to have been specifically passed upon in any case that has been brought to my attention or that I have been able, by independent research, to find. Various cases on the subject appear to be similar but, on careful analysis, are distinguishable. No useful purpose will be served by an extended discussion of these cases.
Plaintiff seeks to invoke the equitable jurisdiction of the court to prevent injury to its trade-mark. It would seem to me, however, the law should not be used as an instrument to deprive an innocent purchaser of its right to dispose of property acquired before knowledge of the existence of the fair-trade agreement.
The proof in this case is to the effect that defendant is and will be unable to dispose of the merchandise if required to adhere to the fair-trade prices. In addition, this would be contrary to its general store policy. Under the special circumstances of this case, it would seem to me that defendant should be permitted to invoke subdivision 2 of section 369-a to permit it to close out these price-fixed items and to discontinue the sale thereof.
Defendant has stated that it has no intention of hereafter purchasing or selling any of the price-fixed merchandise of the plaintiff and, under the terms of the contract entered into by plaintiff with its customers, defendant should be permitted to tender back to plaintiff at its cost the balance of the merchandise on hand covered by the fair-trade agreement. In the event of a failure of plaintiff so to purchase these items, defendant should be permitted to dispose of the merchandise on hand at whatever price it is able to obtain.
It seems to me that in this way substantial justice will be done to both parties. It is my opinion that a holding that defendant could not dispose of this merchandise other than by sale at the prices fixed by plaintiff would be of doubtful constitutionality.
There will be judgment for the plaintiff granting an injunction against future sales by the defendant of price-fixed articles other than those acquired during the month of March but upon the conditions heretofore stated. And this judgment will be without costs.