STATE of Missouri, Respondent,

v.

Benton Benito GAITAN, Appellant.

No. 54164.

Supreme Court of Missouri,
Division No. 2.

July 14, 1969.

John C. Danforth, Atty. Gen., Jefferson City, Robert O. Snyder, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Ward B. Stuckey, Stuckey & Hutcherson, Kansas City, for appellant.

BARRETT, Commissioner.

Upon a charge of first degree robbery with a dangerous and deadly weapon Benito Gaitan has been found guilty and his punishment fixed at life imprisonment. RSMo 1959, § 560.135, V.A.M.S.

These were the circumstances of the charge and conviction: Leo Tomlinson was an employee of National Biscuit Company. He was furnished a company-owned 1966 "turquoise over white" Chevrolet automobile. One of his customers was North Oak United Supermarket, owned by Bob Lemons. Over the years and as a favor to Lemons, usually on Friday, Tomlinson would go to the bank in North Kansas City with a check and bring back bills and coins for change and check-cashing for the weekend business. On August 18, 1967, about 9:30 in the morning Lemons gave Tomlinson a check for $10,000.00 and Tomlinson, in the automobile furnished by National, and a store employee, Franklin, went to the bank and obtained $6850.00 in currency which Tomlinson placed in his pocket and $3150.00 in silver in two or three money bags which was placed on the floorboard in front of the driver. They left the bank at 10:15 and when Tomlinson stopped the automobile at a stop signal at 32nd and North Oak Trafficway on the return trip, looked to his left for traffic and when he "looked back around there was a man standing at the side of the car with a gun pointed through the (passenger side) window of the car." The gunman told Franklin to "Move over," reached in and opened the rear door and got in the back seat and with the gun pointed at Tomlinson said, "Now, go where I tell you." He directed Tomlinson to a parking lot, ordered the automobile stopped and said, "Get out of the car, walk around to the right-hand side of it and take off across that field and run like hell." Tomlinson and Franklin did as commanded and as they ran into a plowed field they heard a car door slam and "looked back and the car was leaving the parking lot and going down North Oak." They went to Farmland Industries where a receptionist called the police. Later that day the automobile was found in front of the Northgate Apartments on Buchanan Street and returned to Tomlinson but the bags of money were missing. Between 11 and 12 o'clock on that same day Shirley Hann of 3002 Buchanan Street checked her front door and in front of her house there was a blue and white Chevrolet and she watched a man take "out a satchel, a bag," and "as he lifted it out of the car, his legs buckled underneath him," and he placed the bag in a blue station wagon across the street and drove off "going fast." She got the license number "as best I could" and it was a Kansas license plate, there were five numerals: "They were five, two something five four, and again, they were basically the same." The station wagon was also a Chevrolet. On September 29, 1967, the appellant, Gaitan, was arrested at 215 W. Pershing Road in Kansas City. He was employed by the Dodsworth Stationery and Printing Company in Kansas City, Kansas, and when arrested was driving the company's 1967 blue station wagon, Wyandotte County, Kansas license plate 5-3454. Tomlinson and Franklin made a police line-up and in-court identification of Gaitan

as the gunman and Mrs. Hann identified him as the man she saw removing the heavy bags from one vehicle to another. Needless to say, these briefly narrated circumstances support the charge and verdict.

This background also puts in proper posture the appellant's two-fold claim that the information is defective and that therefore he is entitled to a new trial. The objections are that the information is insufficient to allege robbery in the first degree in that, one, it does not allege that the defendant took money and property from Tomlinson "in his presence" but only alleges that he "made an assault upon Tomlinson" in his presence, and, two, it does not allege that the Chevrolet, "the property of Leo D. Tomlinson" was "taken in his presence." And, in this connection and citing only the one robbery statute, § 560.-120, it is said for the same reasons, failure to state "in the presence," Instruction 2 was prejudicially erroneous.

■ In the first place, these objections to the information go to its form rather than its substantive allegations, there were no motions directed to the information prior to trial, there is no claim of surprise or entrapment and it is not pointed out just how the appellant was prejudiced by any insufficiency in the information. State v. Mallory, Mo., 423 S.W.2d 721. Insofar as the particular phrase is concerned the information says that Gaitan feloniously made an "assault upon Leo D. Tomlinson *in the presence* of and against the will of the said Leo D. Tomlinson then and there by force and violence to the person" with a pistol took and carried away the supermarket's money and the automobile in his custody. Without considering robbery informations in general, this one is conventional in form and substance and undoubtedly is sufficient to charge the substantive offense of robbery in the first degree with a deadly weapon. State v. Benison, Mo., 415 S.W.2d 773; State v. Kelly, Mo., 107 S.W.2d 19. As to the

specific objection, the robbery here as in an old-fashioned train robbery "was a continuous series of acts, all contributing to, and culminating in, the complete crime of robbery; and, in contemplation of law, *it was both a taking by violence and force and in the presence of the agent.* Greenleaf lays it down that it is sufficient if it be proved that the taking by the robber was actually begun in the presence of the party robbed, though it were completed in his absence." State v. Kennedy, 154 Mo. 268, 284, 55 S.W. 293, 298; 77 C.J.S. Robbery § 9, p. 454. And so it was here even though Tomlinson was in flight when he looked back and saw the appellant drive off with his employer's automobile. In a bank robbery case, speaking of an information, the court said "the words 'in his presence' are by judicial construction held to be substitutionary or tantamount in meaning to the words 'from his person.' * * * These cases hold that where the words 'in the presence' are used in a statute mentioning only a taking 'from the person' the use of the former words and the omission of the latter does not render the indictment or information insufficient." State v. Craft, 299 Mo. 332, 342–343, 253 S.W. 224, 227. By the same token the information and instruction here are not demonstrably prejudicial.

■ The other assignment is that the appellant is entitled to a new trial because a juror, Shannon, who became foreman failed to disclose "that he had in the past served as a police chief for the City or Village of Smithville." At the time of trial Shannon was a foreman for Damon Purcell Construction Company and had been for eighteen years. Thus this is not an instance of either an active or inactive law enforcement officer, either a deputy-sheriff or a policeman, serving on a jury. State v. Butts, 349 Mo. 213, 159 S.W.2d 790, 140 A.L.R. 1177; State v. Langley, 342 Mo. 447, 116 S.W.2d 38. Seventy-six pages of the record are devoted to the voir dire examination of jurors and there

were no questions to individual jurors as to any past law enforcement or peace officer experience they may have had and it is not claimed that there was any statutory disqualification. There were only general questions to the whole panel: "First of all, is there anyone who is either a peace officer, any type of peace officer themselves or a member of their family is a peace officer? * * * Now, is there anyone else that, who's a peace officer themselves, any type, public or private, *whether or not you've worked on the police department or some private agency* as Mr. Chenault does?" Two or three jurors responded to these questions. Mr. Chenault said, "I work for the protection department, Federal Reserve Bank." Another juror had "a cousin that's on the police force in Rolla" and another had a cousin on the police force in Clinton and a third had a nephew on the Kansas City police force and a fourth "a nephew that's a deputy in Platte County." It may be argued that the italicized language relates to the past tense. It is not, however, a plain, direct interrogation as to past police service or experience and, obviously, there was no deception by Juror Shannon and no directly false answers by him. State v. Crawford, Mo., 416 S.W.2d 178, 191–192. Upon this record it may only be said that there was a failure to directly and plainly examine the jurors, individually or collectively, as to their past experience as law officers and thus there is no demonstration of error. 50 C.J.S. Juries § 252, p. 1014.

For the indicated reasons the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.