John Kenneth LOPEZ, Appellant
(Defendant below),

v.

STATE of Wyoming, Appellee
(Plaintiff below).

David L. POMROY, Appellant
(Defendant below),

v.

STATE of Wyoming, Appellee
(Plaintiff below).

Nos. 4375, 4395.

Supreme Court of Wyoming.

Jan. 16, 1976.

John E. Ackerman, Ronald L. Brown, and Phil N. Nash, Casper, for appellants.

David B. Kennedy, Atty. Gen., Cheyenne, Jerome F. Statkus, Asst. Atty. Gen., Cheyenne, and David G. Lewis, Deputy County and Pros. Atty., Casper, for appellee.

Before McCLINTOCK, RAPER and THOMAS, JJ.

THOMAS, Justice.

The appellants-defendants were found guilty by a jury, convicted of and sentenced for the crime of rape, that is, having carnal knowledge of a woman, forcibly and against her will, in violation of § 6–63(A), W.S.1957, 1975 Cum.Supp.[1]

The individual informations which were filed against the defendants were consolidated for trial, and the cases have been consolidated for purposes of this appeal. Two questions are presented by the appellants, which are:

1. Whether they were tried by an impartial jury. This question is premised upon information to the effect that a female member of the jury had herself been a victim of rape some six years before the trial. This information was developed after the trial had been concluded and the jury verdict returned, and it was made the basis for a motion for a new trial by both defendants.

2. Whether the trial court erred in failing to give to the jury a cautionary instruction, tendered by the defendants, relating to the testimony of the victim.

In considering these two questions background information as disclosed by the evidence submitted at trial is helpful. This factual statement is a product of an examination of the evidence in accordance with the standard which must be applied by this Court in reviewing evidence:

"* * * [I]n a light most favorable to the prosecution and determine questions of law as to whether there is substantial evidence, direct or circumstantial, or both, which, with the reasonable inferences that may be drawn therefrom, will sustain the verdict."[2]

The case presented by the State of Wyoming consisted primarily of the testimony of the victim, which was corroborated in many material respects.

The victim was 16 years old at the time of the events leading to this prosecution. One evening at about 9:45 p.m. she finished her duties at the concession counter of a movie theater in Casper, Wyoming. She left the theater, got into her car, and proceeded to drive to her home. After driving about a block, she stopped for a red light at an intersection, and she then noticed the defendants, both of whom were strangers to her, standing by her car. Without her permission, both of them got into the car with Lopez sitting next to her and Pomroy seated by the door. During the course of the events that followed Pomroy engaged in very little dialogue

---

1. Section 6–63(A) provides as follows:

"Whoever unlawfully has carnal knowledge of a woman or female child forcibly and against her will is guilty of first-degree rape, and shall be imprisoned in the penitentiary for any term not less than one (1) year, or during life."

2. *Harris v. State*, Wyo., 487 P.2d 800, 801 (1971).

with the victim. Lopez advised her that she would not be harmed if she furnished transportation to where they wanted to go. The victim was frightened and confused about what to do. Lopez furnished her with instructions as to where to drive, and his directions resulted in a rambling journey around the City of Casper. Once during the course of this journey at a point near a local high school, she told the defendants to get out of her car and that she wasn't taking them any further. Lopez then started choking her, saying, "Look, bitch, just drive." She then drove on, and, as before, Lopez directed her where to go, while at the same time keeping his hands on her neck. While they were driving, Lopez hit the victim an undetermined number of times, accusing her of trying to look at him.

Finally, Lopez directed her to drive to a secluded area near an afterhours club, close to the North Platte River. He told her then that they intended to rape her. She pleaded with them not to do this, but Lopez told her to shut up, and threatened to kill her. He then shoved her over the back of the front seat into the back seat, forcibly disrobing her and in the process ripping off her blouse, bra and pants. Lopez then had sexual intercourse with her after which he urinated all over her. Pomroy then got into the back seat of the vehicle and had intercourse with the victim.

At about this time Lopez unsuccessfully attempted to drive the car. He was unable to get the car into gear, so he ordered the victim to get up in front and drive. The victim was clad only in a sweater at this time, and upon Lopez' direction, she drove to a nearby gas station because she had informed the defendants that she was low on gas. At the gas station a coat was thrown over her naked lap and legs. While there she observed a man that she knew because she had been employed by the man and his wife as a baby sitter, and she called him over to the car to talk to him. She tried, by moving her lips so that the defendants would not notice, to give him a message to call the police, but this effort was unsuccessful. During this time Lopez kept pressure on her right shoulder with his hand.

After they left the gas station, Lopez directed her to drive to the city dog pound, and during that drive, he warned her that if she "went to the cops or told anybody" that he would kill her. At the site near the dog pound Lopez again made her get into the back seat of the car where he first, and Pomroy second, again had sexual intercourse with her. After she had warned them that since the hour was late her family would have called the police to look for her, the defendants permitted her to get dressed, and then directed her to drive to an alley where she let them out of the car. Before leaving her, Pomroy demanded to see her driver's license; Lopez then threatened her by advising that he had plenty of friends and that if she did anything about this and did not meet them at a designated place the next day, he would blow her in half with a double-barrel shotgun. During this entire ordeal, the defendants concealed their names, and the victim did not learn the identity of either of them until she was shown a police photo of Lopez. Later Pomroy was connected, by name, as the other of her assailants.

Promptly after her release by the defendants the victim located her sister; called the Casper Police Department on the telephone; went to the police department to report the rape; and was sent from there to the hospital for examination. The account of the events given by the victim to the people she saw immediately after the crime was consistent in every respect with her testimony at the trial. At the trial her sister testified that when the victim came to her she was crying and screaming that two "guys" had raped her; her clothing was disheveled and torn; and she had no shoes on. Another friend testified that the victim was "kind of hysterical" and was crying; that her hair was all messed up; and she was barefooted. A police officer

described her as very upset at the time she came to the police station. The police detective who conducted the investigation took the victim's descriptions of her attackers, and drove her to the scenes of the rapes. At the site of the first rape he found one shoe which she had lost in the struggle. The physician who examined her shortly after the rapes, by his testimony, established the presence of motile spermatozoa in her vaginal fluid. He also testified that he had observed bruises across the base of her neck and an abrasion over the left cheekbone. Her torn garments were received in evidence.

Both of the defendants testified at the trial, and they admitted the fact of intercourse, but both claim she had given her consent and willingly participated in and enjoyed the experience. As supporting their version of these events the defendants also relied upon the victim's admission to a previous sexual experience which did not involve either of the defendants.

On the day following the trial, which culminated in the return of separate verdicts by the jury finding both Pomroy and Lopez guilty, one of the female jurors telephoned another of the female jurors and advised her that some six years previously she herself had been the victim of a rape by two men under similar circumstances. This telephone conversation had been arranged after the jury's verdict was reached when the first juror asked the second for her phone number, telling her that she would call her the next day and tell her something that would make her feel more comfortable about the result of the jury's deliberations. The information furnished by the first juror was reported to counsel for the defendants by the second juror and counsel then obtained an affidavit from her. This affidavit was attached to the motions for a new trial on behalf of the defendants. The county attorney then obtained an affidavit from the juror who had been the victim of the prior rape. The hearing on the motion for a new trial was conducted upon the factual information contained in those affidavits,[3] no other evidence being taken. •

3. The full text of the affidavits is as follows: "LINDA DARO, of lawful age, being first duly sworn upon her oath, deposes and states: "1. She was one of the 13 jurors duly empaneled to hear the evidence and reach a verdict in the above captioned matter which came on for trial on October 29, 1973, at 10:00 a. m. and concluded approximately 11:00 p. m. October 30, 1973.
"2. One of the other jurors, Mrs. Frances Mercer, took an active part in deciding the case and explained to the other jurors that she could understand how the prosecuting witness felt when the jurors discussed the actions of the prosecuting witness.
"3. When the verdict had been reached, said Frances Mercer stated to affiant, 'Linda, I know how upset you are, but I have something to tell you which I think will make you feel better about your decision. I can't tell you now but please give me your telephone number so I can call you tomorrow.' Affiant gave Mrs. Mercer her telephone number.
"4. The following day affiant received a telephone call from Mrs. Mercer who proceeded to tell affiant that she had been raped six years ago. Mrs. Mercer told affiant it was a similar situation as that alleged and testified to in the above captioned matter, i. e., Mrs. Mercer was driving home in her car after getting off work, two men motioned to her she had a flat tire, she opened the car door and the two men raped her. Mrs. Mercer said she informed the police, was very ashamed and embarrassed, but the two men were never apprehended.
"5. During the telephone conversation Mrs. Mercer stated to affiant that 'everyone else knew about my previous rape.' Affiant does not know who 'everyone else' was."
"COMES NOW, FRANCES MERCER, of lawful age, being first duly sworn, deposes and states:
"1) That she was one of the 13 jurors duly empaneled to hear the evidence and deliberate until a verdict was reached in the above-captioned matter which came on for trial on October 29, 1973, at 10:00 a. m., and concluded approximately 11:00 p. m., October 30, 1973.
"2) That prior to being selected as a juror, affiant, under oath, undertook to answer all questions put to her by the attorneys truthfully which pertained to her qualifications as a fair and impartial juror in the above-entitled matter, and that affiant did in fact answer all questions truthfully which touched on her qualifications to serve on the above matter.
"3) That affiant was involved in and was the victim of a rape a number of years ago,

With respect to their contention that they were denied the right to trial by an impartial jury, the thrust of the defendants' position, which is not subject to development from the record because the voir dire examination of the jurors either was not reported or was not included in the transcript, is that the victim of the prior rape should have disclosed that information in response to a general question as to whether any members of the jury panel knew of any reason why they could not sit as fair and impartial jurors in the case. The record before us does not even disclose that question being asked, but apparently all counsel and the trial judge agreed that a question similar to that was asked of the jurors, and the female juror who had been the victim of the prior rape made no response to the question. We conclude from the record and the briefs that none of the jurors were asked about being the victim of any crime in general or rape in particular.

Upon consideration of the argument and the information contained in the affidavits, the district judge concluded that there had been no actual prejudice to the rights of the two defendants, and for that reason denied their motion for a new trial. The district judge also stated that he could not find that the juror who had been the victim of rape was disqualified as a matter of law because of that prior experience.[4] The defendants insist in this Court that prejudice must be presumed as a matter of law and that their respective convictions must be reversed in order to afford them the right to a new trial before a jury having no such biased member.

■ The appellants' contention is founded upon constitutional mandates. The Sixth Amendment to the Constitution of the United States guarantees to the accused in all criminal prosecutions a " * * * public trial by an impartial jury

---

but this incident has absolutely no bearing as to whether the above two defendants were guilty or innocent of the charges prior to affiant hearing all of the evidence and duly deliberating with her fellow jurors on the question of guilt, and the affiant answered truthfully the questions put to her as to whether she could serve fairly and impartially in this matter to which the affiant answered 'yes,' and whether affiant would presume the defendants innocent of the charge until proven guilty beyond a reasonable doubt, to which affiant truthfully answered 'yes'. "

4. The pertinent parts of the judge's remarks at the time of ruling are as follows:
"From the standpoint of the Court, I would say that the case for the State in this case was of unusual force and strength. It seems inconceivable to me that any unbiased jury would have returned a verdict for the defendants. In other words, I think the verdict is amply supported by the testimony, and I am satisfied from the affidavit [of Mrs. Mercer] and from my own observation of the voir dire, that both sides inquired as fully as they desired into the qualifications of the jury. I have no doubt that Mrs. Mercer, the lady in question, endeavored to answer to the best of her ability those questions which were addressed either to her or to the Jury as a whole. Evidently she believed that she was

unbiased and able to judge fairly, there is nothing in the affidavits which in my judgment would lead to any contrary conclusion. "It would be impossible to obtain a jury of twelve people, who did not have strong feelings about the subject of forcible rape, and if we were to search for such a jury, I think it would be almost impossible to try these cases.

"The fact that this woman had herself been a victim some years before is merely a reinforcement of feeling shared by all reasonable men and women and I do not think that the case presented here would warrant a granting of a new trial, the calling of a new panel of jurors, and the resultant expense to the State. Had this been a close case, one in which the decision might have been difficult, and in which there would be a basis for sharp differences of opinion, the question would be more difficult. But, it is my best judgment that these defendants were fairly tried, and that they should not be permitted by discoveries such as this, after the trial and the verdict, to attack the trial proceeding on matters which might have been elicited on voir dire, but upon which they chose not to inquire. Nor, do I think, that simply because this woman had been a victim, in a similar offense, some years before that this fact alone would have disqualified her from serving."

* * * ." Art. I, § 10, Wyoming Constitution, provides in that regard as follows:

"In all criminal prosecutions the accused shall have the right * * * to a speedy trial by an impartial jury * * *."

This Court does not question the fundamental principle that parties to any action are entitled to a fair and impartial jury. *Vivion v. Brittain*, Wyo., 510 P.2d 21 (1973); and *Redwine v. Fitzhugh*, 78 Wyo. 407, 329 P.2d 257, 72 A.L.R.2d 664 (1958), reh. den. 78 Wyo. 426, 330 P.2d 112 (1958). We conclude, however, that under the circumstances of this case the right to raise the question of the impartiality of the jury with respect to this particular matter was waived.

■ Rule 25 of the Wyoming Rules of Criminal Procedure provides that:

"(a) Examination of jurors. The parties, or their attorneys, may conduct the examination of prospective jurors, but such examination shall be under the supervision and control of the court, and the court may itself conduct such further examination as it deems proper."

The purpose of this voir dire examination is to raise alleged bias "from the realm of speculation to the realm of fact." *Dennis v. United States*, 339 U.S. 162, 168, 70 S. Ct. 519, 521, 94 L.Ed. 734 (1950). It is designed to explore the possible grounds for challenges for cause under our statutes.[5]

In this context a most pertinent provision of the Wyoming Statutes appears in § 7–223, W.S.1957, providing as follows:

"Challenge for cause shall lie with both the defense and the prosecution, and all challenges for cause shall be tried by the court on the oath of the person challenged, or on other evidence, *and such challenge shall be made before the jury is sworn, and not otherwise.*" [Emphasis added]

This Court has considered this problem on two prior occasions. In *Keffer v. State*, 12 Wyo. 49, 73 P. 556 (1903), which was a homicide case, the Court concluded that the only issue presented for trial was whether the defendant was sane and legally responsible for his acts at the time he killed the victim. On appeal the defendant was complaining of the candid admission by one of the jurors that he had formed an opinion as to the guilt of the defendant based upon information furnished by men who were at the coroner's inquest and by others who had brought the prisoner to the jail. He explained that he thought he could give the defendant a fair and impartial trial, but not as well as in a case in which he had never heard anything about the facts, and that he had no different feelings against the defendant than he would have against any other stranger charged with the same crime. The trial court denied the defendant's challenge for cause, and this ruling was raised as error

---

5. Pertinent Wyoming Statutes relating to challenges for cause in criminal cases contain the following language:
"The following shall be good cause for challenge to any person called as a juror on any indictment:
*  *  *  *  *
"Second—That he has formed or expressed an opinion as to the guilt or innocence of the accused, or is biased or prejudiced for or against the accused.
*  *  *  *  *
"Eighth—The same challenges for cause shall be allowed in criminal prosecutions that are allowed to parties in civil cases." § 7–224, W.S.1957, 1975 Cum.Supp.

"Challenges for cause may be taken on one or more of the following grounds:
*  *  *  *  *
"7. The existence of a state of mind in the juror evincing enmity against, or bias to either party." § 1–121, W.S.1957.
"Challenges for cause to individual jurors, shall be allowed for any one of the following grounds:
*  *  *  *  *
"4. The existence in the mind of the juor [juror] of enmity towards, or bias in favor of, either party;
"5. Having formed or expressed an unqualified opinion as to the merits of the controversy." § 1–122, W.S.1957.

in the appeal. This Court conceded that normally the answers given would result in disqualification. It noted, however, that the answers did not evidence an opinion as to the sanity or insanity of the accused. The Court specifically said at 12 Wyo. 65, 73 P. 559:

"* * * The accused was under no obligation to disclose the character of his defense at this stage of the proceedings; but, if he chose to hold it in reserve, he cannot complain that the examination did not direct the attention of the jurors to it, or disclose whether any of them had formed any opinion in regard to it. * * *"

This Court then said that there was no error in the ruling of the trial court because the defendant had failed to pursue a voir dire examination disclosing any bias on the one significant issue to be submitted. This Court also said, quoting from *Holt v. People*, 13 Mich. 224, at 12 Wyo. 64, 73 P. 559:

"* * * 'Where the answer of the juror is fairly susceptible of a construction consistent with his impartiality, the challenging party, if he claims that a different construction should be put upon it, should follow up his inquiries so as to elicit the real facts; and he cannot reasonably require that the juror shall be excluded on the ground that the examination, which he has chosen to leave imperfect, does not exclude all inference of bias.' * * *"

When read in conjunction with the requirements of § 7–223, W.S.1957, *Keffer v. State,* supra, leads to the conclusion that these defendants waived this particular matter in connection with the selection of the jury.

A recent civil case makes the position of this Court clear. In *Vivion v. Brittain,* supra, one of the parties discovered after the case had been tried, that one of the jurors had been involved in a lawsuit for damages to his automobile, but not for any personal injuries. On voir dire the jurors had been asked if they or their families had been involved in a lawsuit for personal injury, and this juror had not responded. This was not considered to be error because he was not asked about any litigation or about injuries to any of his property. The Court there said, at 510 P.2d 24, "* * * The method of determining if a juror is qualified and can reasonably be expected to be fair and impartial is through voir dire examination. * * *" In the same case a question was raised with respect to the disqualification of a juror because of his prior conviction of a felony. In this context we find the following language at 510 P.2d 24:

"There is nothing in the record to show that any member of the jury was ever asked any question which would elicit from them any answer as to their statutory jury qualifications under § 1–78. Under the circumstances we hold that defendant waived any objection to the qualification of this juror because of his previous felony conviction. See 66 C.J.S. *New Trial* § 23, p. 116."

A failure to directly and plainly examine jurors with respect to a particular basis for bias or prejudice, which later is developed, constitutes a waiver of that ground. It is the obligation of the defendant to examine jurors on voir dire and discover by proper investigation facts affecting their qualifications, and then to seasonably raise that objection with respect to any member of the panel.[6] There is no

6. *United States v. Benson,* 495 F.2d 475, 482 (5th Cir. 1974), cert. den., 419 U.S. 1035, 95 S.Ct. 519, 42 L.Ed.2d 310 (1974); *United States v. Ragland,* 375 F.2d 471 (2nd Cir. 1967), cert.den., 390 U.S. 925, 88 S.Ct. 860, 19 L.Ed.2d 987 (1968); *United States v. Gordon,* 253 F.2d 177, 185 (7th Cir. 1958); *State v. Gaitan,* Mo., 442 S.W.2d 530 (1969); *State v. Grillo,* 16 N.J. 103, 106 A.2d 294 (1954); *Roberson v. State,* Okl.Cr., 456 P.2d 595, 600 (1968).

The court in *State v. Grillo,* supra, at p. 299, approved as apt what had been said by the trial judge at the time of ruling on the motion for new trial:

" 'If such ground as this were considered by the Court some two years after the trial, the Court would be setting a precedent

showing in this case that the defendants' right to fully question the jury, as it was being organized, was in any way abridged or interfered with. Under the circumstances the defendants waived the right to complain of the prior experience of the female juror as possible bias or prejudice.

■ Furthermore, we note that the burden, in an instance such as this, is upon the defendants. The Supreme Court of the United States in dealing with jury-related questions has frequently cited and quoted [7] from *Adams v. United States ex rel. Mc-Cann,* 317 U.S. 269, 281, 63 S.Ct. 236, 87 L.Ed. 268 (1942), where the court said in connection with waiver of a trial by jury:

"* * * If the result of the adjudicatory process is not to be set at naught, it is not asking too much that the burden of showing essential unfairness be sustained by him who claims such injustice and seeks to have the result set aside, and that it be sustained not as a matter of speculation but as a demonstrable reality."

Particularly applicable to the necessity of showing an actual impartiality by a juror or jury is the observation made in *Irvin v. Dowd,* 366 U.S. 717, 723, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961), where the Supreme Court of the United States said:

"* * * To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if a juror can lay aside his impression or opinion

and render a verdict based on the evidence presented in court. * * *"

The burden upon the defendants to demonstrate impartiality or bias is well stated in *Fabian v. United States,* 358 F.2d 187, 191 (8th Cir. 1966), cert. den., 385 U.S. 821, 87 S.Ct. 46, 17 L.Ed.2d 58 (1966), where the court said:

"* * * Although there *may have* been prejudice here, appellants would have us reverse the convictions, and remand for a new trial on the assumption that the jury *actually was* so prejudiced that a fair trial was impossible. But the rule is otherwise—jury prejudice cannot be presumed, and appellants have the burden of showing its existence. *Beck v. Washington,* 369 U.S. 541, 558, 82 S. Ct. 955, 8 L.Ed.2d 98 (1962). It rested with appellants to request a hearing and produce evidence to determine which jurors heard the statement and the effect it might have had. Cf. *Frazier v. United States,* 335 U.S. 497, 69 S.Ct. 201, 93 L.Ed. 187 (1948); *United States v. Gordon,* 253 F.2d 177, 184 (7th Cir. 1958). * * *" [Emphasis theirs.]

There is nothing in the affidavits before us which demonstrates any actual partiality by this juror. There is no showing that she argued the jury into its verdict of guilty or that, by reason of her experience comparable to that of the victim here, she was influential in any way in the outcome of the case. The evidence as observed by the trial judge who had long experience on the bench, "was of unusual force and strength" and it seemed "inconceivable to [him] that any unbiased jury would have returned a verdict for the defendants." It

---

whereby after every conviction in a criminal case there might be a re-examination of the intimate life of every person who sat on the jury, going back an indeterminate space of time, and if that minute examination of the past life of any one of the twelve jurors revealed any information that might (not that would, but that might) have some bearing upon the juror's verdict, there would be established a ground for setting aside the verdict and granting a new trial. I think the mere statement of that proposi-

tion answers itself. The situation could be reduced to an absurdity.'"

7. *Stroble v. State of California,* 343 U.S. 181, 198, 72 S.Ct. 599, 607, 96 L.Ed. 872, 885 (1952), reh. den., 343 U.S. 952, 72 S.Ct. 1039, 96 L.Ed. 1353 (1952); *Buchalter v. People of the State of New York,* 319 U.S. 427, 431, 63 S.Ct. 1129, 1132, 87 L.Ed. 1492, 1496–1497 (1943); *United States ex rel. Darcy v. Handy,* 351 U.S. 454, 462, 76 S.Ct. 965, 970, 100 L.Ed. 1331, 1338 (1956).

was not a "close case." The trial judge thought it significant as well that the similar experience had occurred six years previous and was too remote in time and was not one personal to the defendants being tried. Such factors as these also are suggested by *Vivion v. Brittain,* supra.

The trial court specifically found no actual lack of fairness. The fact that a juror has been the victim of a crime not disclosed on voir dire does not require a conclusion of bias or partiality as a matter of law. See, e. g., *Williams v. United States,* 418 F.2d 372 (10th Cir. 1969); and *Brown v. United States,* 356 F.2d 230 (10th Cir. 1966). The language of the United States Court of Appeals for the Tenth Circuit in *Brown v. United States,* supra, is pertinent and appropriate. The defendant there claimed error in not granting a motion for a new trial because of the probable partiality of a member of the jury. During the voir dire inquiry, prospective jurors were asked if any of them or anyone in their immediate family had ever been the victim of an attack on their person. There was no response, and subsequent to the trial it was developed that the brother of one of the jurors had been murdered some years prior. The defendant urged upon the Court of Appeals that he was denied a fair trial and that the verdict was returned by a tainted jury. He did not contend that there was actual bias. The circuit court stated the issue as being whether the circumstances of the case compel an imputation of inherent bias to the jury as a matter of law. The court then stated at p. 232:

" * * * Certainly the voir dire oath administered to potential jurors obligates them fully to tell the truth. However, no reason appears for concluding that the juror was in fact not fully responsive to the actual interrogatory, which referred to the juror's 'immediate family.' Such a term is indeed ambiguous, for depending upon such circumstantial variables as age and marital status, it can import different meanings to differ-ent individuals. Defense counsel was free to explain to the jury what was meant by 'immediate family', and could have expanded his inquiry to include 'family' and 'relatives', but he elected to pursue the point no further. It cannot be presumed that the juror's failure to respond to the question was not proper, and an inference of intentional or inadvertent non-disclosure is unwarranted."

The court continued at p. 233:

" * * * The record here does not disclose that the juror either failed to give a truthful answer to the question propounded, or conceal a known disqualification. * * *

"Disruptive consequences to the trial of criminal cases are suggested by permitting defense counsel to come forth after conviction and successfully contend that, notwithstanding the absence of actual bias, and notwithstanding his own failure sufficiently to pursue voir dire inquiry to expose possible predilections on the part of a prospective juror, that nevertheless probable prejudice must be imputed to the juror as a matter of law and a new trial thereafter granted. 'A disqualification which by reasonable diligence could have been discovered before verdict, may not afterwards be made the subject of an attack upon a verdict.' *Spivey v. United States,* 109 F.2d 181, 186, (5th Cir. 1940), cert denied 310 U.S. 631, 60 S.Ct. 1079, 84 L.Ed. 1401 (1940).

"Therefore, in the absence of any non-disclosure, intentional or inadvertent, from which it can be conclusively presumed that there was so obvious a disqualification and inherent prejudice as a matter of law, *Frazier v. United States,* 335 U.S. 497, 513, 69 S.Ct. 201, 93 L.Ed. 187, reh. denied 336 U.S. 907, 69 S.Ct. 488, 93 L.Ed. 1072, we hold that the action of the court below in denying the motion for new trial was not a clear abuse of discretion."

The contention of the appellants that bias and prejudice must be presumed is

further refuted by the holdings of other courts that the fact that a juror had been the victim of a crime which was disclosed during voir dire examination or during trial did not require a conclusion of partiality as a matter of law. *Hall v. State*, 89 Nev. 366, 513 P.2d 1244 (1973); *State v. Rivera*, 85 N.M. 723, 516 P.2d 694 (1973); *State v. Baran*, 25 Utah 2d 16, 474 P.2d 728 (1970). In the Nevada case the defendant was charged with burglary. On the second day of the trial it was disclosed that the house of one of the jurors had been burglarized during the first day of the trial. The court determined as a matter of fact, that the juror still could objectively participate in the trial, and this decision was approved by the Supreme Court of Nevada. In the New Mexico case the home of a prospective juror had been broken into just nine days before the trial, but it was not considered an abuse of discretion for the trial court to refuse a challenge for cause since the juror stated that he could decide the case fairly and impartially. The charge in that case was burglary. In the Utah case the defendant was charged with the crime of robbery. It appeared that eight members of the jury had been victims of the crime of robbery, but each of them stated that he had not previously formed or expressed an opinion and each of them advised the court that he would act impartially. The Supreme Court of Utah held that the fact of being a victim of a similar crime did not equate with or constitute actual bias.

In light of these authorities we hold, with respect to the contention that the defendants were denied their right to a trial by an impartial jury, that they not only waived that right as to this ground by their failure to examine with respect to it at the voir dire examination; but, furthermore, their failure to demonstrate on the record actual bias on the part of the juror would foreclose the possibility that they could, as a fundamental matter, claim any right to be relieved of the consequences of their waiver.

The second question presented by the appellants is whether the court erred in failing to give a cautionary instruction which they requested. It reads as follows:

"A charge as that made against the Defendants in this case is one, which, generally speaking, is easily made, and once made, difficult to disprove even if the defendants are innocent. From the nature of a case such as this, the complaining witness and the defendants are usually the only witnesses. Therefore I charge you that the law requires that you examine the testimony of the prosecution witness with caution. [In giving this instruction, I do not mean to imply an opinion of my own as to the credibility of any witness.]"

The trial court did give the following instruction:

"YOU ARE INSTRUCTED the charge of rape is likely to create a strong prejudice against an accused. It is a charge easy to make and hard to disprove. Thus, you should bear in mind this difficulty of defending against such a charge and consider carefully all the evidence and instructions of the Court.

"YOU ARE FURTHER INSTRUCTED that from the peculiar character of rape, care should be used by you in considering the evidence for the prosecution, the female claiming injury is a competent witness in such cases, but the degree of credit to be given her testimony depends more or less upon the concurrence of the circumstances and facts proved at the trial in support of her testimony."

The defendants contend that the instruction given by the trial judge is inadequate because it fails to address iself to the credibility of the victim, instead dwelling only upon the weight to be given her testimony. In support of their contention, the defendants cite *State v. Slane*, 48 Wyo. 1, 41 P.2d 269 (1935). There the court did hold that the jury should have been instructed to "examine the testimony of prosecutrix with care." It is to be noted that the instruc-

tion actually given in *State v. Slane,* supra, was different then the one given here, and did not include any sort of cautionary instruction about considering carefully all the evidence. Furthermore, the district court did give the exact instruction given in *State v. Holm,* 67 Wyo. 360, 380, 224 P. 2d 500, 507 (1950), in which the conviction was affirmed.

In other cases this Court has held that where there is reasonably clear corroborating evidence fully justifying the verdict of guilty, a cautionary instruction such as that given here is unnecessary. *Kennedy v. State,* Wyo., 470 P.2d 372, reh. den., 474 P.2d 127 (1970), cert. den., 401 U.S. 939, 91 S.Ct. 933, 28 L.Ed.2d 218 (1971); *State v. Hines,* 79 Wyo. 65, 331 P.2d 605 (1958), cert. den., 366 U.S. 972, 81 S.Ct. 1938, 6 L.Ed.2d 1261 (1961); *State v. Koch,* 64 Wyo. 175, 189 P.2d 162 (1948); *Strand v. State,* 36 Wyo. 78, 252 P. 1030 (1926). Under these cases a failure of a district court to give the cautionary instruction such as that given here would not be error. Certainly in a case such as this in which the victim's testimony was corroborated by her immediate complaint on release, her hysterical weeping, her disheveled condition, her torn clothing, her missing shoe found at the site of one of the episodes, the testimony of the doctor who told of her bruises and the presence of spermatozoa in her vaginal fluid, and even the testimony of the defendants admitting the sexual intercourse, the refusal to give the instruction requested by the defendants, patterned after the cautionary instruction suggested in *State v. Slane,* supra, was not erroneous. The court could have refrained from giving any cautionary instruction at all.

The judgment of the district court is affirmed.

RAPER, Justice (concurring).

I concur in everything my brothers have said and particularly in the result reached, except insofar as it might be inconsistent with what follows. I do not believe they have gone far enough though, and would have held and directed that the trial courts of this State shall no longer give any special cautionary instruction in rape cases, such as that here given or offered or approved by *State v. Hines,* 1958, 79 Wyo. 65, 331 P.2d 605, cert. den. *Petition of Hines,* 366 U.S. 972, 81 S.Ct. 1938, 6 L. Ed.2d 1261; *State v. Holm,* 1950, 67 Wyo. 360, 224 P.2d 500; *State v. Koch,* 1948, 64 Wyo. 175, 189 P.2d 162; *Strand v. State,* 1926, 36 Wyo. 78, 252 P. 1030, or any other case.

My colleagues misconceive the function of an appellate court that it must only dispose of the matter immediately before it, without regard to the fact that in so limiting its effort, it is permitting the perpetuation of error in the future by neglect to frame a course for trial courts and bar to follow. It is true that this court will not generally pass upon questions not necessary to be decided in the disposition of the matter immediately before it. It is a sound rule of appellate practice but it is not so unyielding that we must blind ourselves to other compelling considerations. Justice cannot be administered from within the bindings of a straightjacket. As Chief Justice Blume has observed in those cases where there is a question bound to arise again, it is not only our right but our duty to decide the question and prevent further appeals. A decision on a point under these circumstances cannot be regarded as obiter dictum. *Chicago and North Western Railway Co. v. City of Riverton, Fremont County,* 1952, 70 Wyo. 84, 246 P.2d 789, reh. den. 70 Wyo. 119, 128, 247 P.2d 660, 663–664. In the same case it was observed that "were we to limit our decisions strictly and literally to the arguments advanced by counsel in a case, the law in this jurisdiction would be in a sorry state."

Even though in *Chicago and North Western Railway Co.,* supra, the court had particular reference to a retrial of the same case, it was a principle that does not stop there. The rule, as stated, is but a segment of one of larger scope. It makes

no difference whether the question is bound to arise again in the same case on a subsequent trial or in some other case. An appeal is an appeal and consumes the judicial time of the court regardless of in what case it takes place. When there is an uncertainty on a question, even though the court has doubts as to whether a justiciable controversy exists, to prevent the question from arising in the future, the court will decide the question. *Green's Bar, Inc. v. Johnson*, 1967, 275 Minn. 471, 147 N.W.2d 686. There is an uncertainty in Wyoming prevailing in the light of a consistent striking down of the instruction in other jurisdictions, with good reason. Where a question is likely to plague the bench and bar in the future, a question will be decided, even though not necessary to the disposition of the case before it. *Itasca State Bank v. Superior Court In and For Chochise County*, 1968, 8 Ariz.App. 279, 445 P. 2d 555. It was said in *Cluett, Peabody & Co. v. J. W. Mays, Inc.*, Sup.1958, 6 Misc.2d 145, 165 N.Y.S.2d 992, rev. 5 A.D.2d 140, 170 N.Y.S.2d 255, motion den. 5 A.D.2d 770, 170 N.Y.S.2d 491, aff. 6 N.Y.2d 952, 190 N.Y.S.2d 1013, 161 N.E.2d 223, even though it is not necessary for a court to decide a question in the case before it, an exception is made where questions of importance are presented which are likely to arise with frequency. We cannot deny the importance of properly instructing a jury. A proper verdict in a criminal case depends upon correctly instructing the jury. Other courts have not been hesitant in appropriate cases to decide points bound to appear in the future, even though they could let the trial courts bungle along in cloudy areas of the law. *Doe v. State*, Alas.1971, 487 P.2d 47, 53; *Johnston v. Ing*, 1968, 50 Haw. 379, 460, 441 P.2d 138. See also, the discussion and cases cited in footnote 27, 5 C.J.S. Appeal and Error, p. 608, and supplement, as well as 5 Am.Jur. (Appeal and Error), §§ 760 and 768.

Only recently in *Tavares v. Horstman*, Wyo.1975, 542 P.2d 1275, 1278–1279, we have had an occasion to quote Justice Cardozo from his treatises, "The Nature of the Judicial Process" and "The Growth of the Law":

" ' * * * If judges have woefully misinterpreted the *mores* of their day, or if the *mores* of their day are no longer those of ours, they ought not to tie, in helpless submission, the hands of their successors.' "

" ' * * * A rule which in its origin was the creation of the courts themselves, and was supposed in the making to express the *mores* of the day, may be abrogated by courts when the *mores* have so changed that perpetuation of the rule would do violence to the social conscience. * * * ' "

We cannot permit bad law to infect our jurisprudence.

In failing to take corrective measures, we are doing nothing but contributing to the law's already almost unbearable delays. An appellate court is at liberty to decide a case upon any point which in its opinion the ends of justice may require, even though the matter had not been argued. *State Highway Commission v. Triangle Development Co.*, Wyo.1962, 371 P.2d 408, citing *Wyuta Cattle Co. v. Connell*, 1931, 43 Wyo. 135, 299 P. 279, reh. den. 3 P.2d 101, wherein it was said that if we were limited to the arguments and reasoning of counsel to the exclusion of our own observations, we would be led astray of the true object of the court. That this question was not raised by the Attorney General is of no consequence. The State in the future will be subjected to grievous injury, as will complainants in rape cases. Our function is to promote justice not perpetuate injustice. If we pass up an opportunity to improve and update the administration of justice and discard a fallacious rule, we are not performing our proper judicial function. We are lending the aid of the court to the accomplishment of what is improper.

It seems incomprehensible in this land of Esther Morris where the state motto is "Equal Rights" and the central figure on the Great Seal of Wyoming is a woman, that when her sex walks into a courtroom as the complainant victim of rape, she immediately is branded a suspect, second-class citizen, treated with less respect than her assailants.

The defendants have raised a question about the trial court's cautionary instruction. It has compelled our study in depth of such an instruction and caused an exploration of what the nation's courts have done and are doing about it. There are authoritative reasons to abolish it entirely from use in this jurisdiction as based on ancient, outmoded and invalid reasoning.

The instruction had its origin in the writings of Sir Matthew Hale, Lord Chief Justice of the Court of King's Bench from 1671 to 1676. *State v. Koch,* Wyo.1948, supra; *Strand v. State,* Wyo.1926, supra. The exact language of his musings, as found in 1 P.C. 634–635, is as follows:

> "It is true rape is a most detestable crime, and therefore ought severely and impartially to be punished with death; but it must be remembered, that it is an accusation easily to be made and hard to be proved, and harder to be defended by the party accused, tho [sic] never so innocent." [1]

An examination of the refused instruction, which is little different than the ones this court has approved and to which my

---

1. The basis for his conclusion immediately follows the above quote:

> "I shall never forget a trial before myself of a rape in the county of *Sussex.*
> "There had been one of that county convicted and executed for a rape in that county before some other judges about three assizes before, and I suppose very justly; some malicious people seeing how easy it was to make such an accusation, and how difficult it was for the party accused to clear himself, furnished the two assizes following with many indictments of rapes, wherein the parties accused with some difficulty escaped.
> "At the second assizes following there was an antient wealthy man of about sixty-three years old indicted for a rape, which was fully sworn against him by a young girl of fourteen years old, and a concurrent testimony of her mother and father, and some other relations. The antient man, when he came to his defense, alledged [sic] that it was true the fact was sworn, and it was not possible for him to produce witnesses to the negative; but yet, he said, his very age carried a great presumption that he could not be guilty of that crime; but yet he had one circumstance more, that he believed would satisfy the court and the jury, that he neither was nor could be guilty; and being demanded what that was, he said, he had for above seven years last past been afflicted with a rupture so hideous and great, that it was impossible he could carnally know any woman, neither had he upon that account, during all that time carnally known his own wife, and offered to shew [sic] the same openly in court;

which for the indecency of it I declined, but appointed the jury to withdraw into some room to inspect this unusual evidence; and they accordingly did so, and came back and gave an account of it to the court, that it was impossible he should have to do with any woman in that kind, much less to commit a rape, for all his bowels seemed to have fallen down in those parts, that they could scarce discern his privities, the rupture being full as big as the crown of a hat, whereupon he was acquitted.

> "Again, at *Northampton* assizes, before one of my brother justices upon the *Nisi prius,* a man was indicted for the rape of two young girls not above fourten [sic] years old, the younger somewhat less, and the rapes full proved, tho' [sic] peremptorily denied by the prisoner, he was therefore to the satisfaction of the judge and jury convicted; but before judgment it was most apparently discovered, that it was but a malicious contrivance, and the party innocent; he was therefore reprieved before judgment.

> "I only mention these instances, that we may be the more cautious upon trials of offenses of this nature, wherein the court and jury may with so much ease be imposed upon without great care and vigilance; the heinousness of the offense many times transporting the judge and jury with so much indignation, that they are over hastily carried to the conviction of the person accused thereof, by the confident testimony sometimes of malicious and false witnesses."

As can be seen, the defendants he uses for examples were freed.

brethren encourage durability, indicates that the first and third sentences are paraphrased from CALJIC No. 10.22, California Jury Instructions (3d ed.) :

"A charge such as that made against the defendant in this case is one which is easily made and, once made, difficult to defend against, even if the person accused is innocent.

"Therefore, the law requires that you examine the testimony of the female person named in the information with caution."

Compare them:

"A charge as that made against the Defendants in this case is one, which, generally speaking, is easily made, and once made, difficult to disprove even if the Defendants are innocent.

"From the nature of a case such as this, the complaining witness and the Defendants are usually the only witnesses.

"Therefore I charge you that the law requires that you examine the testimony of the prosecuting witness with caution.

"[In giving this instruction, I do not mean to imply an opinion of my own as to the credibility of any witness.]"

The second sentence was unnecessary because the jury was aware of who testified and, not only that, it was an inaccurate statement in the light of corroborating evidence which has here already been reviewed. The bracketed matter was surplusage. The jury had already been instructed that "[I]t is the exclusive province of the jury * * * to determine the credibility of all witnesses. * * *"

The California instruction has been entirely abrogated for use in that state. In *People v. Rincon-Pineda*, 1975, 14 Cal.3d 864, 123 Cal.Rptr. 119, 132, 538 P.2d 247, 260, it was declared:

"* * * [W]e think the instruction as it has customarily been worded (i. e., CALJIC No. 10.22) is inappropriate in any context, and the further use of such language is hereby disapproved. * * *"

*Rincon-Pineda* has literally taken the bull by the horns and has exploded Hale's myth. After citing extensive statistical data showing that,

"* * * Of the FBI's four 'violent crime' offenses of murder, forcible rape, robbery, and aggravated assault, forcible rape has the highest rate of acquittal or dismissal. * * * Equally striking is the ranking of forcible rape at the bottom of the FBI's list of major crimes according to percentage of successful prosecutions for the offense charged. * * *"

it must be concluded that the charge of rape is not so difficult to defend against as to warrant a cautionary instruction. The court went on to say that: (123 Cal.Rptr. at 132, 538 P.2d at 260) :

"Whatever might have been its historical significance, the disapproved instruction now performs no just function, since criminal charges involving sexual conduct are no more easily made or harder to defend against than many other classes of charges, and those who make such accusations should be deemed no more suspect in credibility than any other class of complaints. When such prosecutions present close evidentiary questions, they do so not because a victim—generally a woman—claims to have been sexually assaulted or abused, but because the alleged crime took place in evanescent circumstances difficult to reconstruct in court, a happenstance which may plague prosecution of any crime involving specific intent, and which is indeed a typical occurrence in such nonsexual crimes as fraud and narcotics transactions. A cautionary instruction bred in the circumstances of 17th century criminal rape and criminal justice need not be disinterred in a contemporary California courtroom to insure that a defendant faced essentially by a single accuser will not be casually convicted with-

out due consideration of the relative weight of the evidence."

California is not the only court to disapprove the instruction. In *State v. Feddersen*, Iowa, 1975, 230 N.W.2d 510, the instruction has been specifically cast off and the courts of that state now are prohibited from using it. That court declared that in Hale's rule:

"There are at least four vices in the first paragraph of that instruction. First, it constitutes a comment on the evidence. Second, it applies a stricter test of credibility to the rape victim than to other witnesses in the trial. Third, it applies a stricter test of credibility to rape victims than to victims of other crimes. Fourth, trial courts have been accorded an indiscriminate right to give or refuse to give the instruction absent any guidelines for so doing."[2]

In *Taylor v. State*, 1972, 257 Ind. 664, 278 N.E.2d 273, the defendant tendered two instructions to the trial court which were refused. One cautioned the jury that the courts have always recognized the danger of conviction on her [the prosecutrix in a rape case] uncorroborated testimony and the testimony of the prosecutrix, if inherently improbable and uncorroborated, will not justify or support a conviction. The other was that "her evidence should be carefully scrutinized for the reason that the charge is easy to make and hard to defend." The court held that it is error for the court to single out any special witness, personally, and burden her testimony with any suggestions which might indicate to the jury that in the opinion of the court such witness was liable to testify falsely.

Instructions as to the credibility of witnesses should be general and apply equally to all the witnesses for the State and the defendant alike. Because a witness may be a rape victim is no reason why she should be visited with condemnation, on the one hand, or clothed with sanctity, upon the other. She is before the court as a witness and should be treated by both the court and the jury just as other witnesses are treated—no better and no worse.

In *State v. Settle,* 1975, 111 Ariz. 394, 531 P.2d 151, defense counsel sought to have the jury given a cautionary instruction in a rape case to the effect that the testimony of the prosecuting witness should be examined with particular care. The instruction was in accord with a past decision of the court. The Supreme Court of Arizona discovered that this was in violation of the state constitution,[3] dealing with a comment upon the weight of the evidence, so its rule is now that a cautionary instruction, such as the one sought by the defendant, is a suggestion to the jury to particularly question the testimony of the prosecuting witness and is a comment upon the weight of the evidence and is a personal opinion of the judge concerning the facts of the case.

It is the jury's province to weigh and allocate the weight to be given to all evidence, direct or circumstantial. *Buckles v. State*, Wyo.1972, 500 P.2d 518, 521, cert. den. 409 U.S. 1026, 93 S.Ct. 475, 34 L.Ed. 2d 320. A jury has the uncanny ability of its twelve minds, and being representative of the common sense of the community, to soon and effectively identify the dis-

---

2. See annotation "Duty of court in criminal prosecution for sexual offense to give cautionary instruction to effect that such a charge is easily made and difficult to disprove." 130 A.L.R. 1489 and Supplemental Decisions. See, in particular, *State v. Yates*, 1965, 239 Or. 596, 399 P.2d 161, declaring that in a

rape case the jury is the judge of effect or value of evidence addressed to it.

3. The provision of the Arizona constitution appears in Art. 6, § 27, and reads as follows: "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law. * * *"

honest and immoral females coming before them with fraudulent cries of rape. It is not my aim to give those schemers refuge in the law.

The alleged victim should be treated as any other witness in any other type criminal case. Credibility is to be tested by and subjected to the same test and scrutiny as applicable to any other witness.[4] To do otherwise is demeaning.

The trial court was not even under the prevailing law of the State required to give the cautionary instruction he did but that is typical of the sincere judge dutifully following what might be considered the unclear past expressions of this court, which said that the cautionary instruction should be given but never reversed for failure to do so. It is doing a disservice to the bench and bar and the people of this State to permit the district courts to continue to wallow in error against the State which cannot appeal or the witness unable to be treated at least equal to other witnesses, including the defendant, who (the witness) likewise cannot appeal. I just cannot join in fostering such error to await some propitious moment, at some uncertain date and occasion in the future, to wipe away such fallacious law. This is a recurrent problem capable of evading review.

---

4. It is noted and suggested that the general instructions in that regard given by the trial judge in this case or something similar would be sufficient:

"The jury is the sole judge of the credibility of the witnesses, and of the weight to be given their testimony. In so doing, you may take into consideration all the facts and circumstances in the case, and give to each such weight as in the light of your experience and knowledge of human affairs you think it entitled to.

"In judging the credibility of the witnesses in this case, you should take into consideration their demeanor upon the witness stand their apparent intelligence or lack of in-

telligence, their means of knowledge of the facts testified to, the interest, if any, which any witness may have in the outcome of the trial, the prejudice or motives, or feelings of revenge, if any has been shown by the evidence in this case.

"If you believe from the evidence in this case that any witness has wilfully and corruptly sworn falsely to any material fact in this case, then you are at liberty to disregard all or any part of his or her testimony, except insofar as the same has been corroborated by other and credible evidence, and the facts and circumstances proven upon the trial."