BILLY DON HALL, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 6856

September 10, 1973        513 P.2d 1244

*Morgan D. Harris,* Public Defender, *Stewart L. Bell* and *Joseph T. Bonaventure,* Deputy Public Defenders, Clark County, for Appellant.

*Robert List,* Attorney General, State of Nevada; *Roy A. Woofter,* District Attorney, and *Charles L. Garner,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, BATJER, J.:

Ronald Fisher testified at the appellant's trial that on the afternoon of May 6, 1971, between 3:00 and 3:30 p.m., he was driving in the alley behind Penwood Street in Las Vegas, Nevada, and observed a white 1966 Pontiac automobile, with a crashed-in side, parked with a driver whom he later identified as the appellant. He further testified that he saw another person wearing black gloves crawl out of the window of an apartment, get into the Pontiac automobile and they drove off.

Within five minutes Fisher telephoned and reported the incident to the Las Vegas police department and the information was broadcast to the officers on patrol. Shortly thereafter the police arrested the appellant for reckless driving. At the time of his arrest he was driving a white Pontiac with a crashed-in side. On the back seat of the automobile was a portable TV, on the front seat a tape recorder, and on the back floor a crowbar, a screwdriver and a pair of black gloves.

The portable television set and the tape recorder found in the white Pontiac were identified by the tenant as having been taken from his apartment. That was the same apartment from

which the person with black gloves had been seen departing through a window.

At a line-up conducted later that evening, Fisher was unable to immediately identify the appellant who was then wearing jail clothes, however, within a short period of time after leaving the line-up area, Fisher telephoned the police and identified the appellant by name. At the trial he identified the appellant as one of the occupants of the Pontiac and he testified that he had known the appellant from school and other activities. The record contains some conflicting testimony concerning statements made to a representative of the Public Defender's office at the line-up by the witness.[1]

The appellant's trial began on October 26, 1971. On the second day of the trial, after the morning recess, it was revealed that juror Darlene Zeh's house had been burglarized during the first day of the trial. At that time the appellant's attorney moved for a new trial [mistrial]. The trial judge out of the presence of the other jurors, questioned Darlene Zeh and determined, as a matter of fact, that she could still objectively participate in the trial even though she had been the victim of a similar crime. Although she admitted telling one of the other jurors about the incident, no other jurors were questioned.

During the giving of instructions to the jury, the appellant requested the following instruction which was not given: "If, upon a fair and impartial consideration of all the evidence in the case, the jury finds that there are two reasonable theories supported by the testimony in the case and that one of such theories is consistent with the theory that the defendant is innocent of charges contained in the information and the other is consistent with the guilt of the defendant, then it is the law and the law makes it the duty of the jury to adopt that theory which is consistent with the innocence of the defendant and find the defendant not guilty."

After the jury had returned a verdict of guilty, the trial judge commented that he agreed with the verdict. Following the discharge of the jury the trial judge in a colloquy relating

---

[1]Jerrold J. Courtney testified: "Well, he [Fisher] said, I asked him before he went into the line-up room, I said, now, if you saw these two suspects would you be able to recognize them and he said, I most definitely would. He said, I got a good look at them."

". . . [A]fter the line-up was over Mr. Fisher, said, no, that's not them, neither of the two people that I saw are in this line-up. . . ."

On cross-examination, Fisher denied telling Jerrold J. Courtney, the representative of the public defender's office who viewed the line-up, "that's not them, I would know them when I saw them."

to the release of the appellant on bail prior to sentencing, informed the appellant that he did not like house burglars and believed that appellant might be a user of narcotics. After argument by defense counsel and the appellant himself, the trial judge fixed bail but cautioned the appellant that he was going to receive a prison sentence. Although the trial ended on October 28, 1971, sentencing was not set until December 14, 1971, and the actual sentence was not entered until December 21, 1971, which time the appellant was denied probation and received a term of six (6) years in prison.

The appellant claims (1) that the record contains insufficient evidence to sustain a conviction; (2) that the trial court erred in failing to grant a mistrial after it was revealed during the course of the trial that the home of one of the jurors had been burglarized, and that this fact had been communicated to another juror; (3) that it erred in failing to properly instruct the jury and, (4) that it erred in making a determination that the appellant would be sentenced to prison prior to receiving the presentence report or hearing evidence by appellant or his counsel in mitigation.

1. The appellant contends that because the state's witness, Ronald Fisher, had been convicted of a felony, his testimony is completely untrustworthy and should not be considered, and without it there is unsufficient evidence to convict him.

The common law rule which prohibits one who has been convicted of an "infamous crime" from testifying was abrogated in this state by statute in 1881 (Comp. Laws, 3472). State v. Roberts, 28 Nev. 350, 82 P. 100 (1905). With certain exceptions every person is competent to be a witness. NRS 50.015.[2] However, for the purpose of attacking the credibility of a witness, evidence that he has been convicted of a felony is admissible under limited circumstances. NRS 50.095.[3] At no place in the .record did the appellant ever attack the credibility of the witness, Fisher, and his credibility cannot be attacked for the first time on appeal. Furthermore,

[2]NRS 50.015: "Every person is competent to be a witness except as otherwise provided in this Title."

[3]NRS 50.095: "1. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime is admissible but only if the crime was punishable by death or imprisonment in excess of 1 year under the law under which he was convicted.

"2. Evidence of a conviction is inadmissible under this section if a period of more than 10 years has elapsed since:

"(a) The date of the release of the witness from confinement; or

it is not our province on appeal to pass upon the credibility of Fisher. State v. Williams, 67 Nev. 373, 219 P.2d 184 (1950). The weight and value of the testimony of a witness is a question for the trier of fact to determine. William v. State, 78 Nev. 346, 372 P.2d 462 (1962). Here the jury made its determination against the appellant. There is sufficient direct evidence in the record beyond Fisher's testimony to support the appellant's conviction.

2.  The fact that juror Zeh was the victim of a burglary committed on the first day of the trial presents a unique situation. However, that fact alone does not, as a matter of law, disqualify her as a juror. NRS 16.050; NRS 175.071; NRS 175.121(4).[4] See: United States ex rel. DeVita v. McCorkle, 133 F.Supp. 169 (DC N.J. 1955); State v. Hirsack, 465

"(b) The expiration of the period of his parole, probation or sentence, whichever is the later date.

"3.  Evidence of a conviction is inadmissible under this section if the conviction has been the subject of a pardon.

"4.  Evidence of juvenile adjudications is inadmissible under this section.

"5.  The pendency of an appeal therefrom does not render evidence of a conviction inadmissible. Evidence of the pendency of an appeal is admissible."

[4]NRS 16.050: "1. Challenges for cause may be taken on one or more of the following grounds: (a) A want of any of the qualifications prescribed by statute to render a person competent as a juror. (b) Consanguinity or affinity within the third degree to either party. (c) Standing in the relation of debtor and creditor, guardian and ward, master and servant, employer and clerk, or principal and agent, to either party; or being a member of the family of either party or a partner, or united in business with either party; or being security on any bond or obligation for either party. (d) Having served as a juror or been a witness on a previous trial between the same parties for the same cause of action; or being then a witness therein. (e) Interest on the part of the juror in the event of the action, or in the main question involved in the action; except the interest of the juror as a member or citizen of a municipal corporation. (f) Having formed or expressed an unqualified opinion or belief as to the merits of the action, or the main question involved therein; but the reading of newspaper accounts of the subject matter before the court shall not disqualify a juror either for bias or opinion. (g) The existence of a state of mind in the juror evincing enmity against or bias to either party.

"2.  A challenge for cause for standing in the relation of debtor and creditor when the party to an action is a public utility as defined in NRS 704.020 may be allowed only where the circumstances as determined by the court so warrant."

NRS 175.071: "If, before the conclusion of the trial, and there being no alternate juror called or available, a juror dies, or becomes disqualified or unable to perform his duty, the court may duly order him

S.W.2d 543 (Mo. 1971). Whether or not the incident disqualified her for cause became a question of fact to be determined by the trial judge. NRS 16.060.[5]

The trial judge fully explored juror Zeh's attitude toward the case and concluded that she was unbiased and that her impartiality was unaffected. His examination did not reveal a state of mind evincing enmity against the appellant and the trial was allowed to proceed. NRS 16.050(1)(g). Only if her answers on *voir dire* had disclosed that she was prejudiced and as a result could not render a fair and impartial verdict would the appellant have been entitled to have her disqualified.

There is no showing on the record before us of any prejudice on the part of juror Zeh, or any other juror on the panel. Nor is there any proof of actual bias nor of facts from which to infer bias. No basis has been shown to support the challenge. The appellant is not entitled to a new trial. See: People v. Martinez, 23 Cal.Rptr. 897 (1962). Cf. State v. Hirsack, supra; State v. Baran, 474 P.2d 728 (Utah 1970); State v. Ragsdale, 187 So.2d 427 (La. 1966).

3.   Where a jury has been properly instructed on the standards for reasonable doubt, an additional instruction such as the one proposed by the appellant is confusing and should not be given. Here the record reveals that the jury was properly instructed on the standards for reasonable doubt and the appellant does not contend otherwise. The trial court did not commit error in refusing the proposed instruction. Holland v. United States, 348 U.S. 121 (1954); Anderson v. State, 86 Nev. 829, 477 P.2d 595 (1970); Vincze v. State, 86 Nev. 547, 548, 472 P.2d 936 (1970).

4.   We cannot agree with the appellant's contention that the trial judge failed to follow statutory requirements, specifically NRS 176.015, NRS 176.135 and NRS 176.145, in pronouncing sentence. The record does not contain a copy of

to be discharged and a new juror may be sworn and the trial begun anew, or the jury may be discharged and a new jury then or afterward impaneled."

NRS 175.121(4): "4. If it appears that the juror has declared any fact relating to the case to his fellow jurors as of his own knowledge, or that his vote was influenced by such knowledge undisclosed, the judge shall declare a mistrial."

[5]NRS 16.060: "Challenges for cause shall be tried by the court. The juror challenged and any other person may be examined as a witness on the trial of the challenge."

the presentence investigation nor a transcript of the proceedings in district court at the time the appellant was sentenced. The appellant relies on Boles v. State, 497 P.2d 449 (Okla. Cr.App. 1972), where the matter was remanded to the trial court with directions to consider the defendant's application for a suspended sentence and to grant or deny the same upon grounds sanctioned by law, however, in that case the appellate court had before it the report from the department of pardon and parole, and a copy of the trial court's order denying the suspended sentence "by reason of the nature of the crime charged."

Although the trial judge's remarks made following the trial were intemperate and ill advised, there is nothing in this record to indicate that probation was denied because he was "harsh on house burglars" or "tough as far as burglars go" or "against house burglars" or because he had a feeling that the appellant was a narcotics user stealing to supply his habit. On the other hand the record does reveal that the trial judge did say: "[I]f you prove not to be a user, I'll give that very serious consideration on my sentencing."

The fact that the trial judge told the appellant "I'm going to sentence you to prison" was not a presentence pronouncement that he was planning to arbitrarily send the appellant to prison, but only a statement of his intention to follow the law of this state. A sentence must first be imposed before its execution can be suspended, and probation granted. NRS 176.015; NRS 176.033; NRS 176.185.

We cannot surmise why probation was denied. On this record we do not find that the trial court denied the appellant's application for probation upon grounds not sanctioned by law.

The judgment of the district court is affirmed.

THOMPSON, C. J., and MOWBRAY, GUNDERSON, and ZENOFF, JJ., concur.