156 N.J. Super. 303 (1978)
383 A.2d 1151
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ROBERT SINGLETARY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted December 19, 1977.
Decided February 14, 1978.
*305 Before Judges CONFORD, MICHELS and PRESSLER.
Mr. Stanley C. Van Ness, Public Defender, attorney for defendant-appellant (Mr. John H. Petito, Assistant Deputy Public Defender, of counsel and on the brief).
Mr. William F. Hyland, Attorney General of New Jersey, attorney for plaintiff-respondent (Ms. Janice S. Mironov, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by CONFORD, P.J.A.D.
The critical issue posed on this appeal is whether, on a trial of a defendant for armed robbery, a venireman who on voir dire states he was the victim of an armed robbery 17 days before the trial, and was challenged for cause, was required to have been excused by the court even though he professed his ability to sit as a fair and impartial juror in the case. After denial of the challenge for cause, defendant challenged the juror peremptorily and thereafter exhausted his allotment of peremptory challenges before the jury was chosen. It is clear that in such circumstances if the ruling of the trial court was erroneous, there was prejudice per se and a reversal of defendant's conviction would be required. Wright v. Bernstein, 23 N.J. 284, 295 (1957); and see State v. Deatore, 70 N.J. 100, 105 (1976). Cf. State v. Calabrese, 107 N.J.L. 115, 119 (E. & A. 1930); Drake v. State, 53 N.J.L. 23, 33 (Sup. Ct. 1890).
The most comprehensive modern discussion by our courts of the law with respect to the need for impartial trial jurors is that of Justice Jacobs in State v. Jackson, 43 N.J. 148 *306 (1964), cert. den. 379 U.S. 982, 85 S.Ct. 690, 13 L.Ed. 2d 572 (1965). The court there reversed a murder conviction for failure of the trial court to excuse a juror who stated that certain members of the police department (in the city where the murder took place) were his neighbors and friends, and that a detective, who was an important witness for the State, had been his close friend for many years. The court restated the cardinal doctrine in this area, as previously enunciated by Justice Oliphant in Wright v. Bernstein, supra, 23 N.J. at 294-295 as follows:
The fundamental right of trial by a fair and impartial jury is jealously guarded by the courts. The jury is an integral part of the court for the administration of justice and on elementary principles its verdict must be obedient to the court's charge based solely on legal evidence produced before it and entirely free from the taint of extraneous considerations and influences. The parties to the action are entitled to have each of the jurors who hears the case impartial, unprejudiced and free from improper influences. [43 N.J. at 158]
The court also quoted with approval a New Hampshire court's dictum that "the trial court should see to it that the jury is as nearly impartial `as the lot of humanity will admit.'" 43 N.J. at 157-158.
In Jackson, while reaffirming the general principle that a "trial court is vested with broad discretionary powers in determining the qualifications of jurors and that its exercise of discretion will ordinarily not be disturbed on appeal," id. at 160, the court nevertheless emphasized that the ultimate question of the juror's bias could not be left by the court to the juror's own opinion on the subject. It pointed to Circuit Judge Murrah's opinion in United States v. Chapman, 158 F.2d 417, 419 (10 Cir.1946), "that impartiality is not a technical concept and that a party's right to a fair and impartial trial is to be resolved in accordance with high standards of human conduct" (43 N.J. at 158); further, from Chapman (158 F.2d at 421), "* * * the ultimate question is a judicial one for the court to decide, and in *307 case of doubt, justice demands that the challenge be allowed." (43 N.J. at 158-159).
In concluding for reversal in Jackson the court made the additional observation, one highly significant in relation to the precise issue before us, that: "In any sound judicial system it is essential not only that justice be done but also that it appear to be done." 43 N.J. at 160-161.
These highly sensitive standards for adjudicating jury impartiality were recently redeclared with emphasis in State v. Deatore, 70 N.J. 100, 105-106 (1976). The court there reversed a robbery conviction on the ground that the trial court had denied defense counsel the opportunity to examine a prospective juror on the extent of her relationship with the victim of the robbery, she having previously said she knew him "personally and [on] business." The court adopted the reasoning of the Appellate Division which had said that an intelligent appraisal as to likelihood of bias could not be formed without the requested examination. 70 N.J. at 105. It was further declared: "Had such inquiry been made and revealed a close relationship, it is not enough that the juror disclaimed any partiality, for, as the court observed in Jackson, sincere as the disclaimer may be, `it runs counter to human nature.'" Ibid.
New Jersey authority relevant to the precise aspect of the jury-bias question here before us  prior victimization of the juror in a crime like that involved in the prosecution  is confined to the Grillo-De Vita felony murder case which engaged our state and federal courts a generation ago. State v. Grillo and De Vita, 16 N.J. 103 (1954); United States v. McCorkle, 133 F. Supp. 169 (D.C.N.J. 1955), rev'd, 248 F.2d 1 (3 Cir.1957), cert. den. 355 U.S. 873, 78 S.Ct. 121, 2 L.Ed.2d 77 (1957). In Grillo and De Vita, supra, there were appeals from the denial of motions for a new trial after convictions of the defendants for felony-murder. These named defendants had been sentenced to death, and a confederate to life imprisonment, at the hands of a jury. The victim of the crime was a special officer shot *308 and killed during a robbery as he was escorting a supermarket manager from his store to a bank with the day's receipts. Some of the veniremen had been examined on voir dire as to whether they or their families had been the victims of a robbery. One of them, Kuhnle, was not so questioned, but only generally as to whether he could decide the case fairly, without prejudice or passion. He responded to such questioning in the affirmative, and was seated as a juror without objection. Kuhnle did not volunteer the information, as was the fact, that 11 months prior to the trial he had been the victim of a robbery at gun-point, apparently while transporting money in his capacity as night manager of a Western Union office to a bank. After ascertaining this fact defendants sought a new trial on grounds of concealment by the juror and bias. The motion was denied.
On appeal, a 5-2 majority of the Supreme Court held there had been no error. "Diligence at the voir dire examination * * * would have brought the Kuhnle robbery incident to light." 16 N.J. at 110. On the merits, the court held that "the imputation of bias to Kuhnle, as a matter of law, because he once had been the victim of highway robbery is only surmise and speculation * * *." Id. at 113; further, that "[t]here is no case made here that the facts are such as in law necessarily raise the presumption of partiality." Id. at 114; (emphasis supplied).
In dissent, Justice Wachenfeld, an experienced trial lawyer and former Essex County prosecutor, said:
One who has been assaulted, threatened with a deadly weapon and robbed is not likely to forget or forgive nor to treat lightly or even fairly similar conduct in others. This is a normal human reaction following customary behavior, expected and anticipated by the background of experience. [16 N.J. at 116]
A comparison of the rationale of the majority and dissenting opinions in Grillo and De Vita with those in the more recent State v. Jackson and State v. Deatore opinions *309 of the Supreme Court discussed above would seem to suggest that the dissent in Grillo and De Vita is more consonant with the later decisions than the majority opinion. Concededly, however, the issues, procedurally and substantively, were different in the respective cases.
When Grillo and De Vita sought habeas corpus relief in the federal courts, their claim was first rebuffed by an adverse decision in the United States District Court. United States v. McCorkle, supra. However, by a 4-3 vote of the Court of Appeals, sitting en banc, the judgment of the District Court was reversed, and the conviction was set aside. The majority expressly adopted the reasoning of the dissent in the state Supreme Court. 248 F.2d at 8.
To the extent that the decisions of the Court of Appeals and our own Supreme Court in the Grillo-De Vita case are inconsistent we would of course be controlled by the holding of the Supreme Court. See State v. Coleman, 46 N.J. 16, 35-38 (1965), cert. den. 383 U.S. 950, 86 S.Ct. 1210, 16 L.Ed. 2d 212 (1966). But that consideration is offset, for present purposes, by several factors. The first, as indicated above, is our view that judged by the tone of its more recent decisions in the field the Supreme Court would today more likely be sympathetic to the minority approach rather than that of the majority in Grillo-De Vita. The second is that in the case before us there are no procedural complications for resolution of the question of bias on its merits. Finally, and of even more importance, the previous criminal action suffered by the juror here challenged took place only 17 days prior to the trial as compared with the 11-month period involved in Grillo-De Vita.
Decisions somewhat consonant with the Court of Appeals holding in Grillo-De Vita are Jackson v. United States, 129 U.S. App. D.C. 392, 395 F.2d 615 (D.C. Cir.1968); Durham v. State, 182 Tenn. 577, 188 S.W.2d 555 (Sup. Ct. 1945), and People v. DeHaven, 321 Mich. 327, 32 N.W.2d 468 (Sup. Ct. 1948). In Jackson, where a jury found defendant guilty of murdering his former wife and assaulting *310 her suspected lover, the conviction was reversed because of the subsequently discovered presence on the jury of a juror who, six months before the trial, apparently had had an affair with a woman who had been killed by her husband. Although with reluctance, the Court of Appeals felt that in view of it being a capital case "the risk of prejudice present as to this juror was such that the only cure is a new trial." 129 U.S. App. D.C. at 394, 395 F.2d at 617. The court said that where "prejudice is manifest, a trial court's findings of jurors' impartiality should be set aside," citing decisions of the United States Supreme Court applying the Sixth Amendment right of criminal defendants to trial "by an impartial jury." Ibid.
People v. DeHaven, supra, was a prosecution for statutory rape. Two of the jurors, questioned on voir dire whether they or any relatives had been involved in a similar case, responded negatively. In fact, as was shown on a motion for a new trial, they were relatives of a person convicted of the same offense. The motion for a new trial was ordered granted by the appellate court on the ground that the relationship of the jurors was such as to deprive them of the capacity to act impartially.
There is some authority to the contrary. In both State v. Rivera, 85 N.M. 723, 516 P.2d 694 (Sup. Ct. 1973), and Hall v. State, 89 Nev. 366, 513 P.2d 1244 (Sup. Ct. 1973), there were burglary prosecutions. In the Rivera case a venireman's home had been burglarized nine days before trial; in the Hall case, on the first day of trial. In both cases, on questioning, the proposed jurors said they remained unbiased as to the case before them, and the judges accepted these representations at face value and overruled challenges for cause. The appellate courts sustained these rulings essentially on the ground that the jurors' responses and the trial judges' decisions to accept them were determinative on appeal. Cf. Brown v. United States, 356 F.2d 230 (10 Cir.1966), where, in a homicide prosecution, a juror's brother had been murdered some years before and *311 the juror failed to answer a question as to whether he or members of his "immediate family" had been the victim of an attack. For reasons hereinafter stated, we do not believe the Rivera and Hall holdings are sound or reflective of New Jersey law.
Other cases purportedly contrary to the position we take, which are cited in the dissent, are distinguishable. In State v. Ragsdale, 249 La. 420, 187 So.2d 427, 429, cert. den. 385 U.S. 1029, 87 S.Ct. 758, 17 L.Ed.2d 676 (1966), and State v. Martinez, 220 La. 899, 57 So.2d 888, 891, cert. den. 344 U.S. 843, 73 S.Ct. 58, 97 L.Ed. 656 (1952), the facts contain no indication as to when the robbery of the juror took place. In Lopez v. State, 544 P.2d 855, 863-864 (Wyo. Sup. Ct. 1976), the crime had taken place six years before the trial, and the point of bias was not raised by the defendant at trial. State v. Baran, 25 Utah 2d 16, 474 P.2d 728, 730-731 (Sup. Ct. 1970), is controlled by a statutory limitation of grounds of implied bias which do not include prior robbery of a venireman. As indicated above, we are concerned in the present case solely with the situation where the prospective juror was recently subjected to a crime of violence, and challenge was made on the voir dire.
The Supreme Court in State v. Jackson, supra, as noted above, approved the concepts that the trial court should see to it that the jury is as nearly impartial as the lot of humanity will admit, 43 N.J. at 157-158; that the impartiality issue should be resolved "in accordance with high standards of human conduct," id. at 158; and that "in case of doubt, justice demands that the challenge be allowed," id. at 158-159. It was also emphasized that in a sound judicial system, not only should justice be done but also it should appear to be done, id. at 160-161.
Applying these precepts, it appears clear to us that a recent victim of an offense similar to that for which an accused is to be tried would be subjected to such grave human strain on his avowed desire and intention to be impartial as a juror that he should be excused in the case as *312 a matter of sound judicial policy. The high necessity for an appearance to the public of the impartiality of the jury conduces to the same result.
We do not believe that the interests of justice call for a rule excluding as a matter of law all victims of crime as jurors, no matter how remote the crime.[1] But when the prospective juror's victimization is recent, as here, and particularly in the case of crimes of violence, the fundamental requirement of an impartial jury cannot be met unless the juror is excused. We venture the opinion that the great majority of New Jersey trial judges, confronted with the precise issue posed in the instant case, would have resolved it by excusing the juror for cause. This may well explain the paucity of New Jersey decisions in this area.
Since we are reversing on the ground stated, we need not discuss defendant's contention that his sentence of 10-13 years in prison, consecutive to any period of incarceration for violation of parole, is excessive, beyond saying we would have found no mistaken exercise of discretion on sentencing.
Reversed and remanded for a new trial.
MICHELS, J.A.D. (dissenting).
I respectfully disagree with the majority in this case. The interests of justice do not demand that every recent victim of crime should be excluded, as a matter of law, from serving as a juror in a criminal case. I would not impute bias and partiality to a prospective juror merely because he has been a recent victim even though the crime may have been of a violent nature. The imputation of bias to such a person is not warranted in the light of human experience, particularly where, as here, the juror under oath disavows any bias or prejudice and affirmatively asserts that he can hear and decide the case fairly *313 and with complete impartiality. Moreover, the majority decision is contrary to the present law of this State. In State v. Grillo, 16 N.J. 103, 113-114 (1954), the Supreme Court expressly held that bias may not be imputed to a juror as a matter of law merely because he once was the victim of an armed robbery. The Supreme Court's opinion on this question is worth quoting, in part:
The sole question here is whether bias may be imputed to a juror in despite of his sworn statement that he was not biased, upon the mere showing that the juror at a time in the past had been a victim of armed robbery.

* * * * * * * *
On the merits there is no charge in this case of actual bias, and the imputation of bias to Kuhnle, as a matter of law, because he once had been the victim of highway robbery is only surmise and speculation and "* * * would be no more sensible than to impute bias to all storeowners and householders in cases of larceny or burglary." Dennis v. United States, 339 U.S. 162, 167, 70 S.Ct. 519, 521, 94 L.Ed. 734, 740 (1950); United States v. Wood, 299 U.S. 123, 149-150, 57 S.Ct. 177, 81 L.Ed. 78, 90 (1936). The law assumes that every citizen is equally interested in the enforcement of the criminal law. Cf. Connors v. United States, 158 U.S. 408, 413-414, 15 S.Ct. 951, 39 L.Ed. 1033, 1035 (1895). There is no case made here that the facts are such as in law necessarily raise the presumption of partiality. Cf. Ex parte Spies, 123 U.S. 131, 8 S.Ct. 21, 31 L.Ed. 80, 90 (1887). * * *
Even assuming that imputed bias of the category asserted by Grillo and De Vita exists, it is not as strong as a preconceived opinion of guilt. Such a preconceived opinion of guilt is not a ground for challenge for cause where the juror states his impartiality under oath to the satisfaction of the trial judge, in the absence of a clear showing of abuse of discretion. It is well settled in this State that the fact that a juror has a preconceived opinion of the case, or has expressed one, does not disqualify him so long as he professes his ability to find a verdict on the evidence alone and in the absence of malice or ill-will. State v. Jefferson, 131 N.J.L. 70, 72 (E. & A. 1943); State v. Stephan, 118 N.J.L. 592, 603 (E. & A. 1937); Wilson v. State, 60 N.J.L. 171, 182 (E. & A. 1897). Cf. Ex parte Spies, supra (123 U.S. at page 177, 8 S.Ct. at page 29, 31 L.Ed., at page 90). [State v. Grillo, 16 N.J. 113-114 (1954).]
While Grillo was decided more than 20 years ago, the precise holding on the jury-bias question has not been overruled *314 or modified and is still controlling. Additionally, more recently decisions in other courts have held that the fact that a juror has been the victim of a crime (even the same crime) does not require a conclusion of bias or partiality as a matter of law. See, for example, Lopez v. State, 544 P.2d 855, 863-864 (Wyo. Sup. Ct. 1976); Hall v. State, 89 Nev. 366, 513 P.2d 1244, 1247 (Sup. Ct. 1973); State v. Rivera, 85 N.M. 723, 516 P.2d 694, 695 (Sup. Ct. 1973); State v. Baran, 25 Utah 2d 16, 474 P.2d 728, 730-731 (Sup. Ct. 1970); State v. Ragsdale, 249 La. 420, 187 So.2d 427, 429 (Sup. Ct. 1966) cert. den. 385 U.S. 1029, 87 S.Ct. 758, 17 L.Ed.2d 676 (1966); People v. Martinez, 206 Cal. App.2d 809, 23 Cal. Rptr. 897, 899-900 (D. Ct. App. 1962); State v. Martinez, 220 La. 899, 57 So.2d 888, 891 (Sup. Ct. 1952) cert. den. 344 U.S. 843, 73 S.Ct. 58, 97 L.Ed. 656 (1952).
In my opinion the determination of a juror's qualifications is best left to the sound discretion of the trial judge. State v. Jackson, 43 N.J. 148, 160 (1964), cert. den. 379 U.S. 982, 85 S.Ct. 690, 13 L.Ed.2d 572 (1965). The trial judge here carefully and thoroughly explored the prospective juror's qualifications. The venireman was involved in an armed robbery at the bank where he was the branch manager. He candidly and fully answered the questions propounded by the trial judge, asserting his ability to fairly and impartially decide the case. His attitude is evidenced by the following pertinent questions and answers:
Q Have you been the victim of a crime? A Yes.
Q Will you tell me when, and the nature? A I work for a bank in New York City and it was held up on January 9th.
Q January 9th of this year? A Of this year, yes, sir.
Q Do you feel that that particular event, having been so recent, would have any effect on your ability to sit as a fair and impartial juror in this case? A No, I do not.

* * * * * * * *
Q Mr. Sheeran, will you apply the law as I will explain it to be regardless of any personal feeling you have about that law? A Yes.
Q Do you have any bias or prejudice against a person simply because he's charged with a crime? A No.
*315 Q Do you know anything about this particular case? A No, I do not.

* * * * * * * *
Q Mr. Sheeran, if you're selected to serve on this jury, would you be a fair and impartial juror to both the State and to the defendant? A Yes, I will.

* * * * * * * *
Q Mr. Sheeran, in connection with the bank robbery, which you've mentioned which occurred just a few weeks ago, were you actually involved in that particular robbery  A Yes.
Q (Continuing) Or was it just a robbery in your particular branch?
A No, I was involved in it.
Q Was it an armed robbery? A Yes, it was.
Q And do you feel that that particular circumstance, considering that this case involves a charge of robbery and being armed during the commission of the robbery, that that particular event so recently would not affect your ability in any way to sit on this case?
A No, I do not.
There is not a shred of evidence that the juror's answers to the foregoing questions were less than candid or that he in fact was biased or prejudiced. I am entirely satisfied that the questioning of the juror protected defendant's right to a fair and impartial trial, and that the trial judge did not mistakenly exercise his broad discretionary powers by refusing to excuse the juror for cause. Cf. State v. Yormark, 117 N.J. Super. 315, 342 (App. Div. 1971), certif. den. 60 N.J. 138, cert. den. 407 U.S. 925, 92 S.Ct. 2459, 32 L.Ed.2d 812 (1972); State v. Boiardo, 111 N.J. Super. 219, 234-235 (App. Div.), certif. den. 57 N.J. 130, cert. den. 401 U.S. 948, 91 S.Ct. 931, 28 L.Ed.2d 231 (1970).
Since I agree with the majority that the sentences imposed were not excessive, I would affirm the judgment of conviction and the sentences imposed thereon.
NOTES
[1] Consideration should be given to the fact that increasing numbers of the public are becoming victims of violent crime and to the consequent effect on the administration of criminal justice of excluding all of them as jurors in such kinds of cases.